# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| McWANE, INC., McWANE TECHNOLOGY, LLC, AND SYNAPSE WIRELESS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 9488-VCP |
| v. | ) ) ) | |
| MONRO B. LANIER III, as Stockholder Representative of each EFFECTIVE TIME STOCKHOLDER under that certain *Agreement and Plan of Reorganization dated May 23, 2012 by and among McWane, Inc., McWane Technology, LLC, McWane Synapse, LLC, Synapse Wireless, Inc., and Monro B. Lanier III, as Stockholder Representative*; and GARY SHELTON, an Effective Time Stockholder; BRAD FLOWERS, an Effective Time Stockholder; and SANDY MORRIS, an Effective Time Stockholder, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted:  October 14, 2014
Date Decided:  January 30, 2015

Richard P. Rollo, Esq., Robert L. Burns, Esq., RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Michael D. Mulvaney, Esq., J. Ethan McDaniel, Esq., James C. Lester, Esq., MAYNARD COOPER & GALE P.C., Birmingham, Alabama; *Attorneys for Plaintiffs.*

Paul D. Brown, Esq., CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; *Attorneys for Plaintiffs.*

Norman M. Monhait, Esq., ROSENTHAL, MONHAIT & GODDESS, P.A., Wilmington, Delaware; David J. Hodge, Esq., MORRIS, KING & HODGE, P.C., Huntsville, Alabama; *Attorneys for Defendants.*

**PARSONS, Vice Chancellor.**

Before the Court is a motion by three individual defendants to dismiss or stay this action. These defendants contend that the Court lacks personal jurisdiction over them. In the alternative, the three defendants seek dismissal or a stay of this case in favor of an allegedly first-filed action in Alabama based on the principles of *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*[1] I conclude that the individual defendants are bound by a forum selection clause in the merger agreement. This Court, therefore, has personal jurisdiction over the individual defendants, and *McWane* is inapplicable. Accordingly, for the reasons that follow, the motion to dismiss or stay is denied.

## I.     BACKGROUND

### A.     Parties

Plaintiff McWane, Inc. ("McWane"), is a Delaware corporation with its principal place of business in Birmingham, Alabama. Plaintiff McWane Technology, LLC ("McWane Technology," and together with McWane, the "Buyers"), is a Delaware limited liability company with a principal place of business in Birmingham, Alabama. McWane Technology is the entity utilized by McWane to accomplish the acquisition of Synapse Wireless, Inc. ("Synapse," and together with the Buyers, "Plaintiffs"), a Delaware corporation with its principal place of business in Huntsville, Alabama.

Defendant Monro Lanier, III (the "Stockholder Representative") is sued solely in his capacity as the Stockholder Representative under the merger agreement. In that capacity, Lanier is responsible for representing the interests of the Effective Time

---

[1]     263 A.2d 281 (Del. 1970).

1

Stockholders,[2] who are defined in the merger agreement as being the stockholders of Synapse immediately prior to the merger transaction.

The complaint also names three other Effective Time Stockholders as Defendants: Gary Shelton, Brad Flowers, and Sandy Morris. Shelton is a resident of Lincoln County, Tennessee. Flowers and Morris reside in Madison County, Alabama. Together, Shelton, Flowers, and Morris constitute the "Individual Defendants," and they have moved to dismiss for lack of personal jurisdiction and inadequate service of process, or to dismiss or stay for improper venue.

### B.    Pertinent Facts[3]

McWane sought to acquire Synapse. To that end, McWane Synapse, LLC, a wholly owned subsidiary of McWane Technology, executed a reverse-triangular merger with Synapse in which Synapse was the surviving corporation (generally, the "Merger"). The Merger was effectuated through a Merger Agreement, with Buyers, McWane Synapse, LLC, Synapse, and the Stockholder Representative Lanier, as the five signatories. The Merger involved a deal structure whereby the Buyers purchased a majority of Synapse's shares and are to acquire the remaining shares over a number of years, beginning in 2016, from the minority Continuing Stockholders through a series of

---

[2]   Unless otherwise specified, all capitalized terms have the same definition as in the "Merger Agreement," a copy of which was submitted as Exhibit A to the Transmittal Affidavit of Richard Rollo ("Rollo Aff.") filed with Plaintiffs' initial complaint.

[3]   This factual background is highly abbreviated and focuses on only those facts necessary to resolve the Individual Defendants' motion to dismiss or stay.

annual put and call options. The framework for those later acquisitions is specified in a Stockholders Agreement.[4] That scheme involves an elaborate system of annual valuations, put and call formulas, and dispute resolution provisions applicable to the period from 2016 through 2023. The Individual Defendants are signatories to the Stockholders Agreement.

The crux of this dispute involves the interplay between the Stockholders Agreement and the Merger Agreement. The Merger Agreement included a number of representations and warranties and required the Effective Time Stockholders, under certain circumstances, to indemnify the Buyers for breaches of those representations and warranties. As partial security for any such claims the Buyers may have, the parties to the Merger set aside $8,000,000 as an Escrow Amount. The Effective Time Stockholders are not liable for any indemnity claims in excess of their pro rata portion of the Escrow Amount, unless the Buyer asserts, and reduces to judgment, a claim for more than the Escrow Amount resulting from fraud or an intentional or willful breach of the Merger Agreement.[5] Based on what they allege are fraudulent financial gimmicks employed by Synapse's management before the consummation of the Merger, Plaintiffs are asserting such an indemnity claim in this case.

---

[4]    The Stockholders Agreement was Exhibit H to the Merger Agreement. A copy of the Stockholders Agreement was submitted as Exhibit A to the Transmittal Affidavit of David Hodge ("Hodge Aff.") filed with the Individual Defendants' Opening Brief on this motion.

[5]    Merger Agreement ("MA") § 8.3(b).

3

Under the Stockholders Agreement, the price for the annual put and call options is established by a formula pursuant to which the Continuing Stockholders can redeem a portion of their shares pro rata based on the greater of: (1) Synapse's annual valuation; or (2) $76,300,000, an amount defined in the Stockholders Agreement as the "Valuation Floor."[6] If Synapse struggles in future years, the Valuation Floor becomes the more important number. The Valuation Floor can be reduced only if the Buyers suffer a loss arising from a breach of certain intellectual property representations in the Merger Agreement or fraud or a willful or intentional breach in connection with the Merger Agreement's representations, warranties, or covenants, among other things, as described in Section 8.2(f) of the Merger Agreement. Thus, Plaintiffs could lower the Valuation Floor if they assert a claim that meets the description in Section 8.2(f) of the Merger Agreement and win damages exceeding the Escrow Amount, among other conditions.[7] Plaintiffs are alleging such claims in this action, and seek damages greater than $8,000,000.

Plaintiffs began to pursue their claims, however, not with a lawsuit, but by initiating the dispute resolution process outlined in the Merger Agreement.[8] Plaintiffs

---

[6]   Stockholders Agreement ("SHA") § 4.2(c).

[7]   The Merger Agreement contemplates that the Effective Time Stockholders could pay the damages award or that the party found to have committed the fraudulent or willful breach could pay, in which case the Valuation Floor would not be affected. Additionally, while Plaintiffs have the right to reduce the Valuation Floor in specified circumstances, they do not have an obligation to do so.

[8]   MA § 8.4(a).

4

submitted a Claim Certificate to the Stockholder Representative on December 13, 2013. The Stockholder Representative responded that the certificate was defective and did not comply with the Merger Agreement's requirements. Nevertheless, the Stockholder Representative lodged his Objection Notice to Plaintiffs' Claim Certificate on February 13, 2014. At that point, the Merger Agreement required a 30-business-day period of good faith negotiations. Thirty business days after Plaintiffs received the Objection Notice and with no resolution having been reached, Plaintiffs became entitled to file suit to pursue their claims.[9] As detailed *infra*, the Merger Agreement includes a mandatory and exclusive forum selection clause that requires any suit "arising out of or relating to" the Merger Agreement to be filed in Delaware.[10] The Stockholders Agreement, on the other hand, includes a "Consent to Jurisdiction and Venue" clause that permits "any action or proceeding against the parties relating in any way to" the Stockholders Agreement to be brought in Huntsville, Alabama.[11] Competing lawsuits here and in Alabama underlie the present motion to dismiss or stay.

### C. Procedural History

#### 1. The Alabama lawsuit

On March 6, 2014, before the 30-day negotiation period expired, the Stockholder Representative filed suit against Plaintiffs seeking a declaratory judgment regarding

---

[9] *Id.* § 8.4(a)(iii).

[10] *Id.* § 10.9.

[11] SHA § 7.3.

Plaintiffs' indemnification claims in the Circuit Court of Madison County, Alabama (the "Alabama Action"). The Individual Defendants in this Delaware action intervened in the Alabama Action on March 27, 2014, by filing a Complaint in Intervention. That complaint was amended on June 12, 2014 (the "Alabama Complaint").[12] As amended, the Alabama Complaint asserts the following three claims: (1) Count I seeks a declaratory judgment that Plaintiffs[13] are not entitled to any devaluation of the put rights or call options; (2) Count II alleges minority stockholder oppression, based on purported self-dealing by Plaintiffs and their efforts to retain the Escrow Amount and devalue the put and call options; and (3) Count III asserts a claim for breach of fiduciary duty based on Plaintiffs' conduct.

### 2. The Court of Chancery lawsuit

Plaintiffs filed suit here on March 31, 2014. According to Plaintiffs, the 30-day cooling-off period ended on Friday, March 28, 2014, and Plaintiffs filed their initial complaint the next business day. Early on, Plaintiffs filed two separate motions for a temporary restraining order ("TRO") to cause the Stockholder Representative to comply with the mandatory forum selection clause in the Merger Agreement and cease his efforts to litigate in Alabama. Those motions resulted in a Consent Order that was approved by this Court on May 20, 2014. In that Consent Order, the Stockholder Representative

---

[12] A copy of the Alabama Complaint, as amended, was submitted as Exhibit B to the Hodge Affidavit.

[13] Unless otherwise noted, all references to Plaintiffs in this Memorandum Opinion refer to the plaintiffs in this Delaware action.

agreed to dismiss his complaint in the Alabama Action and litigate Plaintiffs' indemnification claims here. Also on May 20, the Individual Defendants moved to dismiss this action for lack of personal jurisdiction or to stay it. At the same time, the Individual Defendants continued to press their claims in Alabama. After Plaintiffs filed a third TRO motion to enjoin the Individual Defendants from pursuing the Alabama Action, the parties stipulated on July 9, 2014, that the Individual Defendants would not prosecute their claims in Alabama pending resolution of their motion to dismiss or stay this action.

Plaintiffs filed the operative Amended Verified Complaint (the "Complaint") in this Court on June 11, 2014. The Stockholder Representative answered and counterclaimed on June 19. Plaintiffs responded to the counterclaim on July 9. Thereafter, the parties briefed the Individual Defendants' motion to dismiss,[14] and I heard argument on that motion on October 14.

## II. STANDARD OF REVIEW

On a motion to dismiss under Court of Chancery Rule 12(b)(2), the plaintiff has the burden of showing a basis for the Court's jurisdiction over the nonresident defendant.[15] In the usual case, Delaware Courts resolve the issue of personal jurisdiction

---

[14] Briefing on the motion to dismiss or stay consisted of: the Individual Defendants' Opening Brief ("IDOB"); Plaintiffs' Brief in Opposition ("PAB"); and the Individual Defendants' Reply Brief ("IDRB").

[15] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 (Del. 2005); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *14 (Del. Ch. Aug. 26, 2005).

7

over a nonresident by applying a two-step analysis, which involves determining: (1) whether a statute authorizes service of process on that defendant, and (2) whether subjecting the nonresident defendant to jurisdiction in Delaware comports with the Due Process Clause of the Fourteenth Amendment.[16] In conducting this analysis, the Court may consider the pleadings, affidavits, and any discovery of record.[17] The minimum contacts theory, however, is not the only way to obtain personal jurisdiction over a party. A party also may expressly consent to jurisdiction by contract, in which case a minimum contacts analysis would not be required.[18]

### III. ANALYSIS

#### A. Motion to Dismiss for Lack of Personal Jurisdiction

In their briefing, the Individual Defendants emphasized that they have no relevant contacts to Delaware, denied having consented to litigate here, and argued repeatedly that a finding of personal jurisdiction over them would violate due process. Plaintiffs do not aver that the Individual Defendants have any relevant contacts to Delaware that would implicate our long-arm statute.[19] Instead, Plaintiffs contend that personal jurisdiction is

---

[16] *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992).

[17] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[18] *Capital Gp. Cos. v. Armour*, 2004 WL 2521295, at *2 (Del. Ch. Nov. 3, 2014) (citing, *inter alia*, *Sternberg v. O'Neil*, 550 A.2d 1105, 1109 n.4 (Del. 1988), *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contrs.*, 768 A.2d 983, 987 (Del. Super. 2000), and *USH Ventures v. Global Telesystems Gp., Inc.*, 1998 WL 281250, at *8 (Del. Super. May 21, 1998)).

[19] 10 *Del. C.* § 3104.

8

appropriate here under each of the following three theories: (1) the Individual Defendants are "Parties" to the Merger Agreement and therefore directly bound by the Delaware forum selection clause; (2) the Individual Defendants are third-party beneficiaries of the Merger Agreement; and (3) the Individual Defendants are equitably estopped from challenging the forum selection clause in the Merger Agreement. Because I find the third theory compelling, I concentrate on it and address the other two theories only briefly. Before turning to the equitable estoppel argument, however, it is useful to examine the connection between the Merger Agreement and the Stockholders Agreement.

**1.      The Relationship of the Merger Agreement to the Stockholders Agreement**

The Merger Agreement and the Stockholders Agreement, although two separate contracts, ultimately are just two parts of a larger transaction. The Individual Defendants seek to have the Stockholders Agreement considered in isolation, focus almost exclusively on its terms, and contend that adopting Plaintiffs' position would result in the Stockholders Agreement being "rendered meaningless and construed away."[20]  This is incorrect. The Stockholders Agreement and the Merger Agreement interrelate, were designed to work together, and constitute parts of the package of documents and agreements designed to effectuate the Merger.

**a.      The forum selection clauses**

Both the Merger Agreement and the Stockholders Agreement include clauses concerning the forum in which a lawsuit can be brought. As the clauses themselves

---

[20]      IDRB 7.

9

show, however, the Merger Agreement requires lawsuits arising out of or relating to it to be brought in Delaware, while the Stockholders Agreement includes only a consent to jurisdiction in Alabama.

Section 10.9 of the Merger Agreement states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware . . . . In any action among or between any of the parties arising out of or relating to this Agreement, each of the parties (a) irrevocably and unconditionally consents and submits to the exclusive jurisdiction and venue of the Court of Chancery of the State of Delaware or, to the extent such court does not have subject matter jurisdiction, the Superior Court of the State of Delaware or the United States District Court for the District of Delaware; [and] (b) agrees that all claims in respect of such action or proceeding shall be heard and determined exclusively in accordance with clause (a) of this Section 10.9 . . . . Each party agrees not to commence any legal proceedings related hereto except in such courts.[21]

In addition, Section 10.9 also provides that each party: (c) waives any objection to venue; (d) waives any objection that the Delaware courts lack personal jurisdiction; and (e) allows service of process in accordance with Section 10.1.[22]

The Stockholders Agreement in Section 7.3 provides for a more limited consent to jurisdiction:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware . . . . Any action or proceeding against the parties relating in any way to this Agreement may be brought and enforced in the state or

---

[21]     MA § 10.9.

[22]     *Id.*

10

federal courts sitting in Huntsville, Alabama . . . and the parties irrevocably submit to the jurisdiction of such Courts in respect of any such action or proceeding.[23]

Section 7.3 also provides that each of the parties waives any objection to venue or the convenience of the forum.

A comparison of these two clauses shows that the Merger Agreement requires litigation in this Court for any disputes relating to the Merger Agreement, whereas the Stockholders Agreement permits, but does not require, litigation in Alabama of any disputes relating to the Stockholders Agreement. Conceivably, there could be a claim relating to both the Merger Agreement and the Stockholders Agreement. In such a situation, the mandatory language of the Merger Agreement would trump the permissive language of the Stockholders Agreement. Furthermore, as demonstrated *infra*, the Alabama Complaint fundamentally relates to the Merger Agreement, even if—in some expansive sense of the term—it also may "relate" to the Stockholders Agreement.

### b.    The stock valuation process

The Individual Defendants emphasize that the Merger Agreement and the Stockholders Agreement contain separate indemnification procedures. According to the Individual Defendants, "Plaintiffs chose to segregate methods of indemnification between separate agreements."[24] Through this reading, the Individual Defendants contend that the indemnification provisions found in Article VIII of the Merger Agreement apply only to

---

[23]    SHA § 7.3 (bolded capital emphasis removed).

[24]    IDRB 6.

11

the Escrow Amount and that the Stockholders Agreement's process for lowering the Valuation Floor is a separate form of indemnification. The apparent textual hook for this argument is that the Merger Agreement provides that "nothing in [this] Agreement shall limit the right of [McWane Technology] or any other Indemnified Party to pursue remedies under any Related Agreement against the parties thereto."[25] The Individual Defendants also insist that any devaluation of the put and call rights relates solely to the Stockholders Agreement and the Merger Agreement has nothing to do with that subject.

I find the Individual Defendants' argument untenable. The Merger Agreement and the Stockholders Agreement interrelate and work together; they are two parts of a larger transaction. Buttressing this conclusion is the fact that the Merger Agreement defines the term "Related Agreements" as "the Stock Purchase Agreement, the Subscription Agreement, the Escrow Agreement, *the Stockholders' Agreement*, the Employment Agreements and the Indemnification Agreements."[26]

The crux of the Alabama Complaint—despite being couched in terms of minority stockholder oppression and breach of fiduciary duty—is that Plaintiffs should not be able to "devalue" the put rights or call options described in the Stockholders Agreement. Understanding how those rights can be devalued is important to comprehending the relationship between the Stockholders Agreement and the Merger Agreement and to resolving the Individual Defendants' motion to dismiss or stay this action.

---

[25] MA § 8.2(d).

[26] *Id.* § 1.1 (emphasis added).

As partially described in the facts section *supra*, Section 4.2 of the Stockholders Agreement includes an elaborate system for valuing the put and call options. The value of those options is based on the greater of the Annual Valuation of Synapse, as determined in accordance with the procedures in Section 4.1, or the Valuation Floor. Thus, even if the Valuation Floor is lowered, the Annual Valuation still must be lower than the Valuation Floor for the reduction to have any practical effect on the Continuing Stockholders. Assuming the Valuation Floor comes into play, a number of events must occur before the Valuation Floor would be lowered. Those events include: (1) the Buyers assert a qualifying claim, *e.g.*, a breach of the intellectual property representations and warranties in Section 3.12 of the Merger Agreement or a claim for fraud or willful or intentional breach in connection with the Merger Agreement; (2) the Buyers win damages in excess of the Escrow Amount; (3) a put or call option is exercised, which cannot occur until 2016 at the earliest; (4) the Buyers' damages judgment remains unsatisfied; and (5) McWane Technology chooses to reduce the Valuation Floor to the extent of the unpaid damages.[27]

Accordingly, no fewer than five separate conditions must be satisfied before any reduction in the Valuation Floor can occur. A claim challenging the reduction of the Valuation Floor presumably would arise under the Stockholders Agreement. It is

---

[27] There is an alternative method for reducing the Valuation Floor for claims still pending in 2016. SHA § 4.2(c)(i). That process allows for a temporary reduction of the Valuation Floor, and provides for a reconciliation of the amount of the reduction with the final damages judgment ultimately awarded for the pending claim, and for payments to Continuing Stockholders to be adjusted accordingly.

unclear, however, how such a claim could be asserted currently, because *only one* of the conditions for reducing the Valuation Floor has been satisfied—*i.e.*, Plaintiffs have asserted a qualifying claim. At present, Plaintiffs could not reduce the Valuation Floor, even if they wanted to, because: (1) no one has exercised, nor could anyone have exercised, a call or put option; and (2) there is no unpaid qualifying damages claim, because McWane's indemnification claim is being litigated in this Court and no judgment for damages has ever been entered. Thus, while the Alabama Complaint employs the language of the Stockholders Agreement, it actually is challenging—and, at this point in time, only could be challenging—Plaintiffs' indemnification claim under the Merger Agreement.[28] For example, the Alabama Complaint requests an order that Plaintiffs "are not entitled to any devaluation of put right or call option values based on any allegation raised in their December 13, 2013 communication."[29] The December 13 communication is Plaintiffs' Claim Certificate initiating the indemnification procedures under the Merger Agreement. The fact that the Alabama Complaint contests the merits of Plaintiffs' indemnification claims, which indisputably arise under the Merger Agreement, demonstrates that the Alabama claims arise out of or relate to the Merger Agreement.

---

[28] Consistent with this conclusion, the Alabama Complaint explicitly recognizes that the "agreed-upon valuation floor can be reduced only for 'unpaid subject losses' beyond the amount reserved in the Escrow Agreement if there has been a breach of Section 3.12 (Intellectual Property) of the Merger Agreement or any loss that is a result of fraud, willful or intentional breaches of warranties contained in the Merger Agreement." Ala. Compl. ¶ 13.

[29] *Id.* Count I, Prayer for Relief.

In sum, any reduction of the Valuation Floor must begin with an indemnification claim under the Merger Agreement. Plaintiffs asserted such a claim with their Claim Certificate in December 2013. The Stockholder Representative, and later the Individual Defendants, responded by preemptively filing a declaratory judgment action in Alabama. The relationship between the Merger Agreement and the Stockholders Agreement is such, however, that the Alabama Complaint, by its own allegations, actually challenges Plaintiffs' indemnification claims, which are asserted pursuant to the Merger Agreement and, therefore, must be litigated in this Court.

c. **The "supersedes" clause of the Stockholders Agreement**

The Individual Defendants rely heavily on language in the Stockholders Agreement stating that it "supersedes all prior agreements and understandings with respect to such subject matter."[30] It is not entirely clear how expansively the Individual Defendants would read the "supersedes" clause of the Stockholders Agreement, but I am convinced that, for purposes of the motion to dismiss, their interpretation is unreasonably broad. The Individual Defendants seem to contend that the claims in the Alabama Complaint relate only to the Stockholders Agreement and that the forum consent clause in that agreement supersedes the forum selection clause in the Merger Agreement. This argument raises numerous problems. The Alabama Action, as the previous section showed, does not concern only the Stockholders Agreement; it also contests Plaintiffs'

---

[30] SHA § 7.11.

indemnification claims under the Merger Agreement.[31]  Additionally, the consent to jurisdiction clause in the Stockholders Agreement is permissive, not mandatory as is the analogous clause in the Merger Agreement.

Furthermore, in the context of this dispute, it is not even clear what the Stockholders Agreement would be "superseding."[32]  Besides referring to the Merger Agreement in each of its first three recitals and drawing many of its defined terms from the Merger Agreement, the Stockholders Agreement substantively references the Merger Agreement in the very section upon which the Alabama Complaint is based: valuation of the put and call options.  Indeed, only by following the indemnification procedures in the Merger Agreement could Plaintiffs arrive at a position to be able to lower the Valuation Floor.

### 2.    Equitable Estoppel

Having analyzed the interplay between the Stockholders Agreement and the Merger Agreement, I turn to the issue of personal jurisdiction.  The Individual

---

[31]   The Individual Defendants state in their brief: "The Merger Agreement does not provide any mechanism for devaluing the shareholders' put or call rights; that is only found in the Stockholder Agreement."  IDRB 7.  While this statement superficially may be true, the first step toward potentially devaluing the put or call options is to assert an indemnification claim under the Merger Agreement.  That is the stage of the current dispute between the parties.  Thus, the Individual Defendants put the cart before the horse when they assert that their claims arise only under the Stockholders Agreement.

[32]   In this regard, I note, for example, that the Stockholders Agreement evidently was signed sometime after the Merger Agreement and is defined by it as a Related Agreement.  MA § 1.1.

16

Defendants assert that they are not subject to the Merger Agreement's Delaware forum selection clause. That clause, by its terms, binds only the parties to the Merger Agreement. Those parties were McWane, McWane Technology, McWane Synapse, LLC, Synapse, and the Stockholder Representative. The Individual Defendants argue that a "party cannot be bound to terms not contained in any document the party executed."[33] As non-parties to the Merger Agreement, therefore, the Individual Defendants contend that they are not bound by its Delaware forum selection clause.

"[T]he ordinary rule is that only the formal parties to a contract are bound by its terms."[34] Delaware law, however, recognizes that in some instances parties should be equitably estopped from challenging a forum selection clause. "The doctrine of equitable estoppel prevents a non-signatory to a contract from embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful."[35] The courts employ a three-part test to determine whether a "nonsignatory to an agreement is bound by a forum selection clause in that agreement: 'First, is the forum selection clause valid? Second, are the [nonsignatories] third-party beneficiaries, or closely related to, the contract? Third, does the claim arise from their

---

[33] IDRB 4.

[34] *Alliance Data Sys. Corp. v. Blackstone Capital P'rs V L.P.*, 963 A.2d 746, 760 (Del. Ch.), *aff'd*, 976 A.2d 170 (Del. 2009) (Table).

[35] *Capital Gp. Cos. v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Nov. 3, 2004).

17

standing relating to the . . . agreement?'"[36] An affirmative answer to all three questions will result in the nonsignatories, here the Individual Defendants, being bound by the Merger Agreement's forum selection clause.

### a.     Validity of the forum selection clause

"Forum selection clauses are presumptively valid and have been regularly enforced."[37] Although the Individual Defendants repeatedly assert that subjecting them to jurisdiction in this Court would violate their constitutional rights of due process, it is not clear whether they dispute the validity of the forum selection clause. In general, such a clause will be enforced unless the challenging party can establish that: "(i) it is a result of fraud or overreaching; (ii) enforcement would violate a strong public policy of the forum; or (iii) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable."[38]

The Individual Defendants bear a heavy burden to overcome the presumptive validity of a forum selection clause, and they have failed to satisfy that burden. There is no evidence in this case of fraud or overreaching, and the Individual Defendants mostly restrict their arguments to challenging the constitutionality of subjecting them to personal jurisdiction in this Court. These arguments related more to the latter two prongs of the nonsignatory analysis, and I address them in those contexts. As to the first prong of that

---

[36]     *Baker v. Impact Hldg., Inc.*, 2010 WL 1931032, at *3 (Del. Ch. May 13, 2010) (quoting *Capital Gp. Cos.*, 2004 WL 2521295, at *5).

[37]     *Capital Gp. Cos.*, 2004 WL 2521295, at *6.

[38]     *Baker*, 2010 WL 1931032, at *3 (internal quotations omitted).

18

analysis, I find that the Individual Defendants have not rebutted the presumptive validity of the Merger Agreement's forum selection clause.

### b. The degree to which the Individual Defendants are closely related to the Merger Agreement

"The cases suggest two ways a party can be closely related to an agreement: 1) she receives a direct benefit from the agreement; or 2) it was foreseeable that she would be bound by the agreement."[39]  Contrary to the Individual Defendants' apparent position, the preceding sentence is deliberately disjunctive.  Moreover, under *at least* the direct benefit route, the Individual Defendants are closely related to the Merger Agreement.

### i. Direct Benefit

Upon the Merger's consummation, the Buyers purchased some 60% of Synapse's outstanding stock for $53,000,000 in cash, with $8,000,000 of that amount placed in escrow.[40]  The Individual Defendants collectively received $5,383,108.63 from the sale of their stock, a not insignificant fraction of the total initial purchase price.[41]  Additionally, the Individual Defendants have a contingent interest of $817,276.97 in the Escrow Amount, which, if paid in full, would increase the Individual Defendants' proceeds from the Merger by roughly 15%.  Based on these facts, I conclude that the

---

[39]  *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009) (footnotes omitted).

[40]  Ala. Compl. ¶¶ 8-9.

[41]  Transmittal Aff. of Robert L. Burns ("Burns Aff.") in Supp. of PAB, Ex. C.

19

Individual Defendants did receive a direct benefit from the Merger Agreement such that they would be considered closely related to that agreement.[42]

### ii. Foreseeability

The Individual Defendants assert "that a party cannot be bound to a forum selection clause unless it was foreseeable at the time the agreement was entered that such a clause might be enforced against it."[43] To the extent the Individual Defendants mean to suggest that such foreseeability is required to show they are closely related to the Merger Agreement, they have misstated the law, because it would suffice to show *either* foreseeability *or* a direct benefit to demonstrate that a party is closely related to the agreement. In any event, I find that it was foreseeable that the Individual Defendants would be bound by the Merger Agreement's forum selection clause based on the facts that: (1) collectively they received over $5 million from the Merger Agreement and a contingent claim for nearly a million dollars more from the Escrow Amount; and (2) despite their protestations to the contrary, they are asserting claims arising under the Merger Agreement in the Alabama Action.

---

[42] *See, e.g.*, *Baker*, 2010 WL 1931032, at *4 (concluding that non-pecuniary benefit of having a seat on the board was a direct benefit); *Weygandt*, 2009 WL 1351808, at *4-5 (finding that entering into a related and lucrative lease agreement as a lessor was a direct benefit); *Capital Gp. Cos.*, 2004 WL 2521295, at *7 (holding that acquiring a direct beneficial interest in stock, as opposed to merely having a community property interest, was a direct benefit).

[43] IDRB 15.

The Individual Defendants contest this conclusion, arguing that it was not foreseeable that they would be bound by the Merger Agreement's forum selection clause when they were not signatories to that agreement, but were signatories to the subsequent Stockholders Agreement, which contained its own forum selection clause. As discussed in Section III.A.1.b *supra* and reiterated in the next section, however, the claims asserted in the Alabama Action arise out of and relate to the Merger Agreement and thereby trigger its forum selection clause. Additionally, as previously discussed, the Stockholders Agreement contains a consent to jurisdiction clause only, not a forum selection clause.

### c.　　　Claims relating to the Merger Agreement

Despite the Individual Defendants' vigorous denials, I find that the Alabama Complaint does assert claims that arise out of or relate to the Merger Agreement. For instance, the Individual Defendants characterize the Alabama Action in the following terms: "[It claims] no rights directly flowing from the Merger Agreement. The Alabama Action does not invoke the benefit of the Merger Agreement; instead, it invokes the Stockholders Agreement and seek[s] a declaration concerning a provision in the Stockholders Agreement."[44] I disagree.

First and foremost, and as recognized in the Alabama Complaint itself,[45] the Valuation Floor only can be lowered because of losses resulting from certain breaches of the Merger Agreement. Count I seeks a declaration that Plaintiffs cannot devalue the put

---

[44]　　IDRB 16.

[45]　　Ala. Compl. ¶ 13.

21

or call options on the basis of anything in the Claim Certificate. The Claim Certificate constitutes Plaintiffs' initiation of the Merger Agreement's indemnification procedure. In seeking a declaratory judgment that the Claim Certificate does not provide grounds to devalue the put or call options, the Individual Defendants effectively are challenging Plaintiffs' indemnification claims—claims that must be brought in this Court.

Second, because no put or call option can be exercised until 2016, it is difficult to see how the Individual Defendants can assert a ripe and justiciable claim under the Stockholders Agreement. For one thing, four of the five conditions necessary to lower the Valuation Floor have not been met at this time. The only condition that has been met—Plaintiffs asserting a qualifying claim—clearly is governed by the Merger Agreement and must be challenged, if at all, in this Court. As such, Plaintiffs must be asserting claims under the Merger Agreement.

Third, the very provision of the Stockholders Agreement under which the Individual Defendants purportedly seek a declaratory judgment—Section 4.2(c) concerning the Valuation Floor—is inextricably intertwined with the indemnification provisions of the Merger Agreement. Indeed, that provision of the Stockholders Agreement explicitly recognizes that a reduction of the Valuation Floor represents a remedy for breaches of the Merger Agreement.[46] A fair reading of the Stockholders

---

[46] For example, the Stockholders Agreement states: "After the application of the limitations in Section 8.3 of the Merger Agreement or the expiration of the Survival Date, the granting of the option to reduce the Valuation Floor provided for herein shall, except for fraud or any willful or intentional breach, constitute the sole remedy of the Indemnified Parties . . . ." SHA § 4.2(c).

Agreement indicates that it contemplates that the indemnification provisions of the Merger Agreement would have to be invoked and pursued at least to some extent before there possibly could be a reduction of the Valuation Floor specified in the Stockholders Agreement.

Considering all of the evidence, I conclude that the Alabama Complaint arises out of and relates to the Merger Agreement.

### 3. The "Parties" and "Third-Party Beneficiary" Arguments

In the preceding section, I concluded that this Court has personal jurisdiction over the Individual Defendants by virtue of the fact that, having accepted significant benefits under the Merger Agreement and now having filed suit asserting claims relating to that contract, they are equitably estopped from challenging the application of the Merger Agreement's forum selection clause. Plaintiffs also advanced two alternative theories under which they assert this Court has jurisdiction. First, Plaintiffs contend that the Individual Defendants in fact are "parties" to the Merger Agreement by virtue of the appointment of the Stockholder Representative. And, second, they argue that the Individual Defendants are third-party beneficiaries of the Merger Agreement.

The "parties" argument relies on the facts that the stockholders appointed the Stockholder Representative and that the Stockholder Representative: (a) is a party to the Merger Agreement and therefore the forum selection clause; and (b) consented to jurisdiction here by dismissing his Alabama Action. This theory is more persuasive as to the two Individual Defendants who submitted stockholder consents to effectuate the

23

Merger.[47]   Those consents included a specific authorization for the Stockholder Representative to act for the signing stockholders as their agent and attorney-in-fact with respect to claims for indemnification under Article VIII of the Merger Agreement. As to the third Individual Defendant, however, the link to the Stockholder Representative is more tenuous.

The "third-party beneficiary" argument presents a closer question. At least some of my analysis of the equitable estoppel issue overlaps and would support the existence of personal jurisdiction under this theory. It is also true, however, that the Merger Agreement includes a clause disclaiming third-party beneficiaries,[48] and the parties dispute the effect of that provision.

In any event, I find it unnecessary to consider Plaintiffs' alternative jurisdictional arguments further. The equitable estoppel theory discussed *supra* provides a sound basis for personal jurisdiction over each of the Individual Defendants. That is, the Individual Defendants are equitably estopped from asserting that this Court lacks jurisdiction over them.[49] Thus, personal jurisdiction over the Individual Defendants is proper and their motion to dismiss under Rule 12(b)(2) will be denied.[50]

---

[47]   Burns Aff., Ex. A. Those Defendants are Gary Shelton and Brad Flowers.

[48]   MA § 10.4

[49]   *See Weygandt*, 2009 WL 1351808, at *6.

[50]   The Individual Defendants also rather weakly challenged service of process. IDOB 16 n.9. Service of process was effectuated pursuant to the procedures in the Merger Agreement. MA §§ 10.1, 10.9. The concept behind equitable estoppel is

24

## B. The *McWane* Motion to Dismiss or Stay

In the alternative, the Individual Defendants request that I stay this action. "It has long been held in Delaware that, 'as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing.'"[51] Thus, "[u]nder the [*McWane*] first-filed rule, this Court freely exercises its broad discretion to grant a stay 'when there is [1] a prior action pending elsewhere, [2] in a court capable of doing prompt and complete justice, [3] involving the same parties and the same issues.'"[52] *McWane*, however, is merely the default rule and is not controlling in every situation involving competing lawsuits.

In certain situations, for example, the Delaware courts will consider two lawsuits to be contemporaneously filed, notwithstanding the fact that one of them technically was

---

that a party should not be able to receive the benefits of a contract while simultaneously avoiding the burdens. Having concluded that equitable estoppel binds the Individual Defendants to the Merger Agreement's forum selection clause, I also conclude that the same line of reasoning allows service of process pursuant to the procedures in the Merger Agreement.

[51]  *Transamerica Corp. v. Reliance Ins. Co. of Ill.*, 1995 WL 1312656, at *3 (Del. Super. Aug. 30, 1995) (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,* 263 A.2d 281, 283 (Del. 1970)).

[52]  *In re Bear Stearns Cos. S'holder Litig.,* 2008 WL 959992, at *5 (Del. Ch. Apr. 9, 2008) (quoting *McWane*, 263 A.2d at 283).

filed first.[53]   In the case of such contemporaneous filings, Delaware courts usually evaluate a motion to stay using *forum non conveniens* principles, rather than the *McWane* factors.[54]

Another situation in which the *McWane* doctrine is not controlling is when the parties displace it by contract.[55]   "Forum selection clauses are presumptively valid in Delaware and [*Ingres Corp. v. CA, Inc.*] holds that such a clause displaces the traditional default presumptions under *McWane*."[56]   But, the Individual Defendants deny that *McWane* has been displaced here.   Instead, they argue that there are "two competing

---

[53]   *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Crosstex Energy Servs., L.P.*, 2013 WL 6598736, at *4 & n.29 (Del. Super. Dec. 13, 2013) (finding complaints filed three days apart contemporaneous and collecting cases); *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 116 (Del. Ch. 2009) (finding actions filed a few days apart to be contemporaneous and citing cases).

[54]   *Citigroup*, 964 A.2d at 117.   Neither party briefed this issue.   I note, however, that the Merger Agreement contractually prohibited Plaintiffs from filing suit until March 28, 2014.   The earliest relevant lawsuit for purposes of the motion to stay was the Stockholder Representative's Alabama Action.   The Stockholder Representative arguably had no right to file that suit, because it appears to have violated the Merger Agreement's forum selection clause.   The Individual Defendants intervened in the Alabama Action on March 27, 2014, a day before the 30-day cooling off period specified in the Merger Agreement expired.   Plaintiffs filed this action in Delaware two business days later, in accordance with the forum selection clause in the Merger Agreement.   Ultimately, there is no need to reach the issue, but Plaintiffs would have at least a colorable argument that the Alabama and Delaware lawsuits were filed contemporaneously and that the more stringent *forum non conveniens* analysis, rather than *McWane*, should apply.

[55]   *See Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) ("The reason is that the *McWane* principle is a default rule of common law, which the parties to the litigation are free to displace by a valid contractual agreement.").

[56]   *ASDC Hldgs., LLC v. The Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Trust*, 2011 WL 4552508, at *6 (Del. Ch. Sept. 14, 2011).

26

forum selection clauses" and that "different contracts send certain disputes under each respective contract to different forums."[57] I do not read the two forum selection clauses that way.[58] Any disputes relating to the Stockholders Agreement *may* be brought in Alabama.[59] Any disputes "arising out of or relating to" the Merger Agreement *must* be brought in Delaware.[60] Having explained at length that these two agreements are complementary and not conflicting, I conclude that the only reasonable way to interpret these clauses is that the mandatory trumps the permissive. Thus, in a situation—such as the one before me—where a dispute relates to both contracts, the mandatory Delaware forum selection clause controls.[61]

Having previously concluded that the Individual Defendants are bound by a valid forum selection clause in the Merger Agreement, I find that that clause governs the parties' relationship and displaces *McWane*'s default first-filed rule. Accordingly, I deny the Individual Defendants' motion to stay.

---

[57] IDRB 19.

[58] *See supra* Section III.A.1.a.

[59] SHA § 7.3.

[60] MA § 10.9.

[61] The claims asserted in this case and those in the Alabama Action relate to the Merger Agreement, even if some also might relate to the Stockholders Agreement. The Alabama Complaint emphasizes the Stockholders Agreement, but ultimately challenges the merits of Plaintiffs' indemnification claims, which arise under the Merger Agreement. *See* discussions in Sections III.A.1 and III.A.2.c, *supra*.

27

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion, the Individual Defendants' motion to dismiss or stay this action is denied.

**IT IS SO ORDERED.**