**HORNBERGER MANAGEMENT COMPANY, a Delaware corporation, Plaintiff,**

v.

**HAWS & TINGLE GENERAL CONTRACTORS, INC., Defendant.**

**C.A. No. 98C–10–242 SCD.**

Superior Court of Delaware, New Castle County.

Submitted: Aug. 16, 2000.
Decided: Aug. 24, 2000.

---

Charles Snyderman, Esquire, Newark, attorney for Plaintiff.

M. Duncan Grant, Esquire, Andrea B. Unterberger, Esquire, Pepper Hamilton LLP, Wilmington, attorney for Defendant.

## MEMORANDUM OPINION

DEL PESCO, J.

This contract dispute arises out of the hiring of an Executive Vice President by defendant Haws & Tingle General Contractors ("H & T"), a construction company, following a referral from plaintiff Hornberger Management Company ("HMC"), an executive placement agency. H & T contends that it was aware of the candidate it ultimately hired prior to the referral, therefore the compensation set out in the contract is not due. HMC contends that H & T was not aware of the candidate's "current availability," thus the contractual fee is owed. The issues before the Court are whether the defendant is subject to personal jurisdiction in Delaware and, if so, what damages are owed for the services rendered by HMC. There are very few facts in dispute. This is the Court's decision on the facts and the law.

### I. Affirmative Defense—Lack of Personal Jurisdiction

Defendant H & T filed a motion to dismiss for lack of personal jurisdiction pursuant to Superior Court Civil Rule 12(b)(2). Decision was deferred until after presentation of the evidence in a one-day non-jury trial. Defendant argues that its due process rights under the 14th Amendment to the Constitution are violated by being compelled to defend this claim in Delaware. Plaintiff HMC asserts that personal jurisdiction over defendant exists because defendant consented to litigation in Delaware pursuant to the forum selection clause contained in its contract with H & T.[1]

### A. Factual Background

In its answer to the complaint filed in December, 1998, defendant asserted, "the Court lacks personal jurisdiction over Haws & Tingle." Defendant then participated in mandatory arbitration pursuant to the Court rules. The parties apparently entered into an agreement to present documents and argument to the arbitrator, but not live testimony. Consequently neither HMC's principal, Frederick Hornberger ("Hornberger"), nor H & T's principal, James Hasenzahl ("Hasenzahl"),[2] were present to create a record regarding jurisdictional issues. Jurisdictional issues were not addressed at the arbitration a though it is within the authority of the arbitrator to consider such matters. The arbitration was decided in favor of the plaintiff and the defendant appealed by filing a timely demand for trial de novo on September 17, 1999.

The parties initiated discovery in early 2000. On February 23, 2000, a status conference was conducted by the Court for the purpose of establishing a case manage-

---

1. The contract contains the following provision:

 HMC is a corporation incorporated under the laws of the state of Delaware, with its principal office and place of business in Wilmington, Delaware. It should be understood that any activities, involvements, or representations with HMC satellite locations, affiliates, or associations located outside of Wilmington, Delaware are to be considered entirely representative of the principal office, and that you consent to the jurisdiction of the court in the state of Delaware, and agree that its laws shall govern our relationship. (emphasis supplied).

2. At all times, Hornberger and Hasenzahl were acting as agents of their respective corporations. They were the only non-expert witnesses at trial. For simplicity their names will be used to reflect both their individual positions and the positions of the corporations they represent.

ment order. That order set a deadline for the filing of dispositive motions of May 1, 2000, and a discovery cut-off date of June 30, 2000. Trial was scheduled for August 16, 2000. By stipulation of the parties, approved by the Court, the deadline for the filing of case dispositive motions was extended from May 1, 2000, to June 30, 2000. The deposition of plaintiff Hornberger was taken on May 26, 2000.

Without leave of the Court, on July 27, 2000, some three weeks *after* the extended deadline for dispositive motions, the defendant filed a motion to dismiss on various grounds: lack of personal jurisdiction, improper venue, and *forum non conveniens*. The plaintiff filed a response on August 9, 2000, and the matter was heard on August 14, 2000. I denied the motion as to venue and *forum non conveniens* as untimely, but reserved decision on personal jurisdiction in view of the trial scheduled for two days later which would provide the opportunity to develop a full record on all issues.

The testimony regarding the plaintiff's contact with the State of Delaware offered at trial did not deviate significantly from the testimony offered at the deposition taken in May, 2000. Hornberger testified that plaintiff is a Delaware corporation which was created in 1993. The only permanent office for the corporation from 1993 to date has been an "Executive Suite" leased in Wilmington, Delaware. Hornberger, the only fee-generating agent of the corporation, rarely comes to Delaware—he estimated the frequency to be about once a year. Hornberger is in frequent contact with the Delaware office, receives correspondence at that office, and sends out correspondence which bears the Delaware address from wherever he might be. The corporation conducts its banking in Delaware and pays taxes in Delaware.

Hornberger explained that he chose Delaware as the site for his operations because he finds that businesses in the Northeast disfavor southern corporations, and business in the South disfavor Northern corporations, so Delaware's mid-Atlantic location projects a neutral image.

Hornberger lived in Delaware when he first set up the corporation but now finds it beneficial to travel around the country, living—usually for a number of months—in places where the construction business is active. He works out of a hotel room or his residence, wherever that might be. His residence in recent times has been in North Carolina, Louisiana, and Florida, to name a few.

The contact between Hornberger and Hasenzahl, the only persons directly involved in the contacts which give rise to this claim, occurred when Hornberger was at various locations, principally in New Orleans and never in Delaware. At all times pertinent, Hasenzahl was in Texas at the home office of H & T, or in Maine where he vacations. The record reveals only one contact within the borders of the State of Delaware—a fax from Hasenzahl to Hornberger dated May 29, 1998. It is clear that the fax was received in Delaware and forwarded to Hornberger in Louisiana either by fax or by United States Mail.

## B. Due Process

Plaintiff bears the burden of establishing personal jurisdiction over the defendant.[3] Where there is conflicting evidence, disputes must be construed in the plaintiff's favor.[4] In order to justify personal jurisdiction, plaintiffs must show facts sufficient to meet the requirements not only of the long arm statute, but also constitutional due process.[5]

3. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, D.Del., 542 F.Supp. 53, 55 (1982) (citations omitted); *Hart Holding Co., Inc. v. Drexel Burnham Lambert, Inc.*, Del.Ch., 593 A.2d 535, 539 (1991).

4. *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, M.D.Fla., 814 F.Supp. 1058, 1063–64 (1993)

5. *Gunton Corp. v. KNZ Construction, Inc.*, Del.Super., C.A. No. 98C–04–094, Quillen, J.,

■ As to the long arm statute, the defendant has been sued pursuant to 8 *Del. C.* § 382 which gives this Court jurisdiction over nonqualifying foreign corporations. The challenge to jurisdiction in this instance is not predicated on the long arm statute. As to due process, in order to subject a defendant to personal jurisdiction, the defendant must either have minimum contacts with the forum state or consent to jurisdiction. A party may expressly consent to jurisdiction by agreeing to a forum selection clause.[6] If a party consents to jurisdiction, a minimum contacts analysis is not required.[7]

■ For reasons developed more fully below, I find that the parties entered into a contract which contained a valid forum selection provision. Forum selection clauses are prima facie valid[8] and do not violate due process if they are the product of a "freely negotiated" agreement and are not "unreasonable and unjust."[9] "[T]he mere absence of negotiation over a forum selection clause does not make the forum selection clause unenforceable."[10] The facts do not suggest fraud or overreaching such as to invalidate the forum selection clause.[11]

Defendant's sole contact with Delaware was sending one fax to Hornberger at the Delaware office. Such a contact does not satisfy the minimum contacts requirement; however, defendant has consented to the jurisdiction of this Court pursuant to the forum selection clause contained in the contract. Even without the forum selection clause, I find jurisdiction appropriate as defendant has waived its personal jurisdiction defense by its conduct.

## C. Waiver

■ Personal jurisdiction is a right which can be waived.[12] Rule 12(b) requires that a defendant raise certain defenses, including lack of personal jurisdiction, in either a responsive pleading or by motion. The purpose of Rule 12(b) is to expedite litigation and encourage the resolution of disputes on their merits.[13] While a defendant is permitted to raise lack of personal jurisdiction in its answer, "[a]sserting a personal jurisdiction defense in an answer does not preserve the defense in perpetuity."[14] Defendant is "required at some point to raise the issue by motion for the court's determination."[15] "A litigant must exercise great diligence in chal-

1999 WL 744423 (July 30, 1999) (Letter Op.) (citing *Outokumpu Engineering Enterprises v. Kvaerner Enviropower, Inc.*, Del.Super., 685 A.2d 724, 727 (1996)) (citing *LaNuova D & B, S.p.A. v. Bowe Co.*, Del.Supr., 513 A.2d 764, 768–69 (1986)).

6. *See Sternberg v. O'Neil*, Del.Supr., 550 A.2d 1105, 1111 (1988) (stating that express consent is a valid basis for the exercise of jurisdiction absent minimum contacts).

7. *USH Ventures v. Global Telesystems Group, Inc.*, Del.Super., C.A. No. 97C–08–086, Quillen, J., 1998 WL 281250 (May 21, 1998) (Letter Op.);

8. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

9. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907); *Leasefirst, Inc. v. Fleet Refinishing, Inc.*, Del.Super., C.A. No. 93J–

12–011, Ridgely, P.J., 1994 WL 463451 (July 18, 1994) (ORDER).

10. *Simm Assoc., Inc. v. PNC Nat'l Bank*, Del.Super., C.A. No. 98C–02–219, Quillen, J., 1998 WL 961764 (Oct. 8, 1998) (Letter Op.) (citing *Haskel v. FPR Registry, Inc.*, E.D.N.Y., 862 F.Supp. 909, 916 (1994)).

11. *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907.

12. *Burger King*, 471 U.S. at 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Sternberg*, 550 A.2d at 1109 (citation omitted).

13. *Tuckman v. Aerosonic Corp.*, Del.Ch., 394 A.2d 226, 232 (1978).

14. *Network Professionals, Inc. v. Network International Ltd.*, D.Minn., 146 F.R.D. 179, 183–84 (1993) (citing *Yeldell v. Tutt*, 8th Cir., 913 F.2d 533, 539 (1990)).

15. *Burton v. Northern Dutchess Hospital*, S.D.N.Y., 106 F.R.D. 477, 481 (1985).

lenging personal jurisdiction or venue; he should do so at the time he makes his first defensive move."[16]

There is a substantial body of law which holds that a defendant can waive a defense of lack of personal jurisdiction because the defendant's conduct did "not reflect a continuing objection to the power of the court to act over the defendant's person."[17]

In the Colorado case of *Marquest Medical Products, Inc. v. EMDE Corp.*, the defendants stipulated to the entry of a preliminary injunction during the pendency of trial.[18] Subsequently, defendants filed a motion to dismiss alleging improper venue and lack of personal jurisdiction.[19] The court denied defendants' motion, stating "[a]lthough defendants have not formerly consented to this suit I find that by their untimely objection to jurisdiction and venue and by their conduct they have submitted to the resolution of this dispute by this court."[20]

In the Second Circuit case of *Datskow v. Teledyne, Inc., Continental Products Division*,[21] the defendant participated in a conference with the magistrate where scheduling of discovery and motions was discussed. Defendant did not raise defec-

tive service of process or lack of personal jurisdiction at that conference, although those defenses had been raised in its answer to the complaint.[22] Defendant subsequently filed a motion to dismiss, which was granted by the trial court.[23] In reversing the trial court, the appellate court stated that "[a] delay in challenging personal jurisdiction by motion to dismiss has resulted in waiver, even where, as here, the defense was asserted in a timely answer."[24]

In the New York case of *Burton v. Northern Dutchess Hospital*, the defendant consented to the establishment of a discovery schedule and engaged in extensive discovery without alluding to lack of personal jurisdiction, which had been raised in its answer to the complaint.[25] Defendant subsequently filed a motion to dismiss. The court denied defendant's motion, finding the defense to have been waived, stating "a prompt motion to dismiss would have saved all parties and the court the expense of years of discovery, pre-trial conferences and motions relating to discovery and to the merits of the complaint."[26] The court also noted that "[d]efendants repeatedly joined plaintiff in requests for extensions of the discovery

**16.** *Marquest Medical Products, Inc. v. EMDE Corp.*, D.Colo., 496 F.Supp. 1242, 1245 (1980); *see* Wright & Miller, *Federal Practice and Procedure* § 1391 (2000).

**17.** *Alger v. Hayes*, 8th Cir., 452 F.2d 841 (1972); *Marquest*, 496 F.Supp. at 1245 n. 2. "Courts have deemed personal jurisdiction and venue waived by reason of moving for summary judgment, *Thompson v. United States*, 10th Cir., 312 F.2d 516, 519–520 (1962); participation in a motion for injunction pendente lite, *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 3d Cir., 376 F.2d 543 (1967); stipulating to conditional confession to judgment and moving to set aside a decree and for other affirmative relief, *Feldman Inv. Co. v. Connecticut Gen. Life Ins. Co.*, 10th Cir., 78 F.2d 838 (1935); participation in another party's motion for change of venue based upon forum non conveniens (28 U.S.C. § 1404(a)), *Altman v. Liberty Equities Corp.*, S.D.N.Y., 322 F.Supp. 377 (1971); and substantial passage of time during which pre-trial preparation was undertaken, *Ft. Wayne Corru-*

gated Paper Co. v. Anchor Hocking Glass Corp., W.D.Pa., 31 F.Supp. 403 (1940)."

**18.** *Marquest*, 496 F.Supp. at 1244.

**19.** *Id.*

**20.** *Id.* at 1245.

**21.** 2d Cir., 899 F.2d 1298 (1990).

**22.** *Id.* at 1300.

**23.** *Id.* at 1301.

**24.** *Id.* at 1303 (citing *Burton*, 106 F.R.D. 477; *Vozeh v. Good Samaritan Hospital*, S.D.N.Y., 84 F.R.D. 143 (1979) (finding a waiver of the personal jurisdiction defense where defendant raised the defense in his answer but did not file a motion until almost the eve of trial)).

**25.** *Burton*, 106 F.R.D. at 480.

**26.** *Id.* at 481.

period. The conduct is inconsistent with defendants' assertion that the court lacks personal jurisdiction over them." [27]

 The personal jurisdiction defense "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." [28] While the defendant in this case initially complied with Rule 12 by raising lack of personal jurisdiction in its answer, I find that defendant's conduct was inconsistent with its defense of lack of personal jurisdiction. Defendant submitted to the jurisdiction of this Court by participating in the arbitration process without raising jurisdiction, filing a motion for a trial *de novo*, entering into a case scheduling order, participating in discovery, stipulating to an extension of time for filing case dispositive motions, and failing to file the motion before the deadline for the filing of case dispositive motions.

Having found that defendant is bound by the forum selection clause contained in the contract and, in any event, that the defendant waived its personal jurisdiction defense by implication, I will now turn to the merits of this case.

## II. Breach of Contract

### A. Factual Background

The significant events of this claim took place in May, June and July of 1998. In late May, 1998, Hasenzahl, the President of H & T, received a "cold call" from Hornberger, the sole agent of HMC, an executive placement agency. Hasenzahl had very recently come to the conclusion that the individual occupying the position of Executive Vice President at H & T had to be replaced. The call from Hornberger came at precisely the right moment. Hasenzahl explained his requirements to Hornberger and agreed to receive resumes for suitable Executive Vice President candidates. The first resume forwarded to

Hasenzahl was accompanied by a fee agreement. That fee agreement contained several provisions which are of interest to this litigation:

#### Placement Fees

Our charge to you for this placement service is a fee equal to one-third of the candidates' total cash compensation to be earned during the first twelve months of employment. This includes base salary, estimated bonus or commission, sign-on bonus, and other cash compensation. Stock options and other equity contributions are also included. (emphasis supplied)

\* \* \* \* \* \*

Fees not paid within thirty days . . . are subject to a one and a half percent service charge compounded monthly. Should HMC be forced to retain legal counsel and/or collection services to seek payment of these fees, you will be charged any such fees plus all costs of suit, if any.

#### General Conditions

\* \* \* \* \* \*

["paragraph four"]
If you are already aware of the current availability of candidates we refer, please notify us giving the candidate's name, and the date and source of your prior contact or referral at the address below within 7 days of receipt via the U.S. Postal Service postage due. Otherwise, we will proceed on the understanding that we are the source of referral. (emphasis supplied)

\* \* \* \* \* \*

As mentioned, the fee agreement accompanied a resume. As fate would have it, it was the resume of Ken D. Norton, an individual well known to Hasenzahl. In 1996 Hasenzahl had offered Norton the very position he was now trying to fill.

---

27. *Id.*

28. *Yeldell,* 913 F.2d at 539 (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939)).

After the breakdown in the negotiations, Hasenzahl and Norton had maintained contact on an occasional basis.

Norton did not testify at trial, but his affidavit, submitted by stipulation, includes the following:

\*　　\*　　\*　　\*　　\*　　\*

2. Sometime around 1996, I was contacted by James Hasenzahl who got my name through a mutual friend in the industry that we were both in. Mr. Hasenzahl had recently purchased Haws & Tingle, and he talked with me by phone about the possibility of my becoming employed by Haws & Tingle. The particular job we discussed was Executive Vice President, which is the same position that I ultimately took in 1998.

\*　　\*　　\*　　\*　　\*　　\*

4. After my discussions in 1996 with Mr. Hasenzahl ended, I considered our talks about my becoming employed by Haws & Tingle concluded, and I continued to work . . . .

5. In early 1998, I was approached by Rick Hornberger, of Hornberger Management Company, about some job opportunities. I told Mr. Hornberger that if I were to make a move, it would be to Texas, which is where I am from. Mr. Hornberger spoke to me about several opportunities, one of which he described as an Executive Vice President in Dallas. Mr. Hornberger did not identify the employer by name at that time, and I did not ask who the employer was.

6. Within a few days, or possibly a week, after Mr. Hornberger described the Executive Vice President position to me, I received a call out of the blue from James Hasenzahl. Mr. Hasenzahl asked me if I would be interested in re-opening our discussions. I told him that I might be interested in doing so.

7. After I spoke with Mr. Hasenzahl, it occurred to me that what he and I spoke about sounded like the Executive Vice President position Mr. Hornberger had described to me a few days earlier. I asked Mr. Hornberger if the opportunity he described was in fact with Haws & Tingle, and Mr. Hornberger stated that it was. I immediately informed Mr. Hornberger that Mr. Hasenzahl and I had known each other for years, that we had actually spoken in depth about this position in 1996, and that an offer of employment had been made.

8. In the years after my 1996 interview with Mr. Hasenzahl, he and I spoke from time to time in general conversation. Between the time in 1996 when our talks about my becoming employed by Haws & Tingle concluded, and the time in early 1998 when Mr. Hasenzahl called me to find out if I would be interested in reopening our discussions, I don't recall whether or not we ever talked again about the position with his company.

Upon receipt of Norton's resume and the fee agreement, Hasenzahl's secretary contacted him in Maine. She discussed with him paragraph four of the General Conditions which is quoted above. Without actually reading the fee agreement, Hasenzahl caused his secretary to fax Hornberger a letter dated May 29, 1998 wherein he disclosed the fact that he knew Norton and did "not consider that you are the source of referral for Mr. Norton." None of the other terms or conditions of the fee agreement were mentioned in the letter.

Upon receipt of Hasenzahl's letter, Hornberger responded with a fax which states, *inter alia:* "Even though Ken Norton may have spoken to you several years ago, we were solely responsible for bringing him to your attention in regards to your current employment need. Your phone contact with him last week was based on our referral, and consequently any hire that results from this referral will result in our fee being due according to the terms detailed in our fee schedule. (Included is another copy for your records)." In a subsequent telephone conversation, there was some general discussion about

the amount of fee that would be paid but no agreement was reached. The next written communication was Hornberger's bill to Hasenzahl which Hasenzahl indicated he would not pay. Litigation followed in Delaware a few months later.

Hornberger's involvement with Norton after forwarding the resume to Hasenzahl was limited to several telephone conversations. Hasenzahl commenced and quickly consummated negotiations with Norton, who joined the company effective July 1, 1998.

At trial, Hasenzahl acknowledged he did not know that Norton was looking for a position when he received Norton's resume. He also acknowledged that he received a service from Hornberger, but did not agree that the value of the service was as set forth in the fee agreement.

### B. Discussion

■ The first issue is was there a contract. I conclude that there was. The offer was made by Hornberger to provide a service. The acceptance was by silence.

■ The Restatement of Contracts 2d provides at § 69:

(1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:

(a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.

Hasenzahl admits that he consented to receive the resumes from Hornberger (and two additional resumes which were sent after Norton's), but he argues that he did not accept the terms of the fee agreement. There is clear evidence that Hasenzahl received the Norton resume accompanied by the fee agreement, and although he invoked a provision of that agreement in an attempt to avoid a fee, he took action on the basis of the resume, ultimately employing Norton. There can be no doubt that when Hasenzahl accepted the benefit of the services, he knew the service was offered with the expectation of compensation. Prior to his contract with Hornberger, Hasenzahl was not aware of the current availability of Norton and thus the "carve out" provision of paragraph four does not pertain.

The next issue is the compensation to be paid. The contract has a provision for a one-third fee. The evidence is that Norton was paid a total of $172,307 during the first twelve months of employment. One third of that fee is $57,435.67. The defendant argues that the $15,000 paid on July 7, 1998 was to reimburse Norton for the costs associated with his move to Texas and should not be reimbursed. I reject that argument for two reasons. First, the agreement is broadly worded to include "sign-on bonuses, and other cash compensation". Since the money was paid at the commencement of Norton's employment, it can easily be seen to fit either description. Second, the money was taxed as income to Norton as reflected in the exhibit in evidence. I conclude that the damages award is $57,435.67 plus pre-judgment interest.

■ The next issue relates to the rate of interest to be awarded. The contract clearly provides for interest of one and a half percent per month, compounded monthly. Interest is to be paid in the amount contractually agreed upon.[29] The contract calls for interest from ten days after receipt of invoice. There was no specific evidence as to when the invoice was received, but it was sent, according to the exhibits, on July 16, 1998. I will infer that it took a week to arrive, and award pre-judgment interest from July 23, 1998 until the entry of judgment. As to post-judgment interest, that is governed by

29. *F.E. Myers Co. v. Pipe Maintenance Services, Inc.*, D.Del., 599 F.Supp. 697, 704 (1984).

statute. Monthly compounding is contrary to Delaware law.[30] And, in no event shall the rate of interest exceed that permitted by statute. The parties are instructed to compare the contractual rate with the legal maximum as provided by statute and agree on the applicable rate of post-judgment interest.[31]

Plaintiff's counsel is to submit his affidavit in support of the claim for costs and counsel fees. The parties are to confer and submit within 10 days of this decision an order setting forth the defendant's financial obligations in accordance with the rulings contained herein.

IT IS SO ORDERED.

---

**30.** *Weinberger v. UOP, Inc.,* Del.Ch. 517 A.2d 653, 657 (1986).

**31.** 6 *Del. C.* § 2301.