# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| QLARANT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N22C-02-044 FWW |
| v. | ) | |
| | ) | |
| IP COMMERCIALIZATION LABS, LLC, | ) | |
| STUDIOWORKS, INCORPORATED, | ) | |
| WILLIAM MAPP and DAMON HUNT, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: March 16, 2022
Decided: July 6, 2022

*Upon Defendant IP Commercialization Labs, LLC's Motion to Dismiss the Verified Complaint for Declaratory Judgment,*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Daniel M. Silver, Esquire, Johanna Peuscher-Funk, Esquire McCARTER & ENGLISH, LLP, Renaissance Centre 405 N. King Street, 8th Floor, Wilmington, DE 19801, Attorneys for Plaintiff Qlarant, Inc.

John G. Harris, Esquire, BERGER HARRIS LLP, 1105 N. Market Street, Ste. 1100, Wilmington, DE, 19801; Meredith Sharoky Paley, Esquire, SPIRO HARRISON, 830 Morris Turnpike, Second Floor, Short Hills, NJ 07078; Jason Charles Spiro, SPIRO HARRISON, 2 Bridge Avenue, Suite 322, Red Bank, NJ 07701; Attorneys for Defendant IP Commercialization Labs, LLC.

**WHARTON, J.**

# I.     INTRODUCTION

Plaintiff Qlarant, Inc. ("Qlarant") initiated this declaratory judgment action in the Court of Chancery on July 2, 2021.[1]  It sought a declaration that: (1) Defendant IP Commercialization Labs, LLC ("IPCL") was not a shareholder of Defendant StudioCodeworks Incorporated ("SCI"); (2) transactions consummated pursuant to an Asset Purchase Agreement ("APA") dated December 31, 2019 between it and William Mapp, III ("Mapp"), and Damon O. Hunt ("Hunt") were validly consummated; and (3) IPCL be permanently enjoined from asserting it held stock or any other interest in SCI at the time the APA was executed and the transaction contemplated by the APA was consummated.[2]  IPCL moved to dismiss under Court of Chancery Rules 12(b)(1), (2), and (3) on the grounds that the Court of Chancery lacked personal jurisdiction over it, lacked subject matter jurisdiction over the dispute,[3] was an improper forum, and alternatively, the matter should be dismissed on *forum non conveniens* grounds.[4]  After the Motion was fully briefed, the Court of Chancery dismissed the case because the Vice Chancellor found that

---

[1] Compl., D.I. 1.  Unless otherwise stated, docket item references are to the Court of Chancery docket.
[2] *Id.*
[3] Def.'s Mot. to Dismiss, D.I. 9. The challenge to the Court of Chancery's subject matter jurisdiction contended that Qlarant had an adequate remedy at law.  Def.'s Op. Br., at 19-22, D.I. 13.  In light of that Court's Opinion, that argument is moot in the Superior Court.
[4] Def.'s Op. Br., D.I. 13.

2

Qlarent's proposed declaratory judgments would, if granted, give it an adequate remedy at law, divesting that court of equity of subject matter jurisdiction.[5] The matter then was transferred to this Court pursuant to 10 *Del. C.* § 1902.[6] This Court's decision on IPCL's Motion to Dismiss follows.

## II. FACTS AND PROCEDURAL HISTORY.

The following facts are taken from the Court of Chancery's Opinion:

> On December 31, 2019, plaintiff Qlarant, Inc. ("Qlarant") purchased assets from StudioCodeworks, Inc. ("Studio") and several of its affiliates (the "Transaction"). The Transaction was memorialized in an asset purchase agreement (the "APA"). While the parties were negotiating the Transaction, defendant IP Commercialization Labs, LLC ("IPCL") claimed it held an interest in Studio. The APA represented that Studio's only shareholders were defendants William Mapp and Damon Hunt. Mapp and Hunt signed the APA, authorizing the Transaction as Studio's only shareholders.
>
> On February 14, 2020, IPCL and its affiliates filed an action challenging the Transaction against Studio, its affiliates Mapp, and Hunt in the Circuit Court of Maryland for Prince George's County (the "Maryland Action"). Qlarant, IPCL, and Studio are all Maryland entities, and Mapp and Hunt live in Maryland. In the Maryland Action, IPCL alleges breach of fiduciary duty, breach of contract, tort, and Maryland statutory fraud claims. IPCL alleges it owns a twenty percent interest in Studio and asserts some claims derivatively on Studio's

---

[5] *Qlarant, Inc. v. IP Commercialization Labs, LLC,* 2022 WL 211367 (Del. Ch. Jan. 25, 2022).
[6] D.I. 27.

3

behalf. IPCL's most recent Maryland complaint, dated June 25, 2021, added Qlarant as a defendant.[7]

Prior to the Court of Chancery issuing its decision, counsel for IPCL and Qlarant wrote separately to the Vice Chancellor regarding Qlarant's motion to dismiss in the Maryland Action. The Maryland court denied the motion, but the parties disagreed about what implications, if any, that denial had for the litigation in Delaware.[8] This Court has been provided with no further updates on the Maryland Action.

## III. THE PARTIES' CONTENTIONS.

IPCL contests Delaware personal jurisdiction on two grounds. First, Qlarant has not demonstrated any basis under Delaware's Long Arm statute, 10 *Del. C.* § 3104(c), for personal jurisdiction over IPCL.[9] It does not allege any "Delaware business, conduct or acts of any kind by ICPL," instead predicating Delaware jurisdiction on the APA's Delaware forum selection provision.[10] IPCL argues that the forum selection provision cannot confer personal jurisdiction in Delaware over IPCL because it was not a party to the APA.[11] Second, IPCL has no minimum contacts with Delaware to satisfy due process requirements.[12]

---

[7] Q*larant,* at *1.
[8] D.I. 23 (IPCL), D.I. 24 (Qlarant).
[9] Def.'s Op. Br., at 12, D. I. 13.
[10] *Id.*
[11] *Id.,* at 12-16.
[12] *Id.*, at 16-18.

4

Under IPCL's interpretation of the APA's forum selection provision, Qlarant cannot lawfully bring this action in any Delaware court.[13] In IPCL's view, the forum selection provision applies only to the interpretation and enforcement of the APA, and the relief Qlarant is seeking is beyond that limited scope.[14] Qlarant is asking a Delaware court to determine that Mapp and Hunt were the only shareholders of SCI, but that is a determination that cannot be made without going beyond the four corners of the APA.[15] In fact, IPCL's complaint in Maryland is that SCI and Qlarant fraudulently cut IPCL from their deal, intentionally failing to acknowledge IPCL's equity ownership interests.[16] The express language of the APA is inadequate to resolve that contention.[17]

IPCL's alternative argument is that this action should be dismissed on *forum non conveniens* grounds. All of the parties to the first complaint filed are in Maryland; all of the events occurred in Maryland; all of the critical witnesses are in Maryland; the controversy between Qlarant and IPCL is not dependent on Delaware law because IPCL never signed the APA; and IPCL would face continued

---

[13] *Id.,* at 22-25.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

inconvenience litigating in Delaware.[18]  Thus, all of the relevant factors favor dismissing the litigation here in favor of the ongoing Maryland Action.[19]

Qlarant asserts that this Court has personal jurisdiction over IPCL.  Where a forum selection clause governs a dispute, the Court need not engage in traditional personal jurisdictional analysis, nor is a minimum contacts analysis necessary.[20] Because IPCL has chosen to "stand in the shoes" of SCI by asserting derivative claims in the Maryland Action, and because SCI agreed to the forum selection clause in the APA, IPLC has waived any objection to the forum selection clause.[21] Even if IPCL has not waived its opposition to personal jurisdiction, it nonetheless is bound by the APA, despite being a non-signatory because it is equitably estopped from contesting that clause.[22]  Since IPLC is seeking to claim the benefits of the APA in the Maryland Action, it is estopped from denying the application of the forum selection provision.[23]

With regard to IPCL's contention that no Delaware court would be a proper forum in which to litigate because the nature of the dispute between the parties is too broad to trigger the APA's limited forum selection provision, Qlarant responds

---

[18] *Id.*
[19] *Id.*
[20] Pl.'s Ans. Br, at 6-8, D.I. 14.
[21] *Id.,* at 8-10.
[22] *Id.,* 10-15.
[23] *Id.*

6

that IPCL reads the APA too narrowly.[24]   The APA encompasses not just interpretation and enforcement of the APA, but also disputes "in respect of the transactions contemplated."[25]   Read in this fashion, the APA is broad enough to require that Delaware be the forum for this litigation.

Finally, Qlarant rejects IPLC's *forum non conveniens* ground for dismissal. Not only was the Maryland Action not first filed as to Qlarant, but dismissal in favor of the Maryland Action would contravene the APA.[26]   Moreover, IPLC cannot demonstrate that being required to litigate in Delaware would subject it to such overwhelming hardship that this is one of those rare cases where the drastic relief of dismissal is warranted.

## IV.   STANDARD AND SCOPE OF REVIEW

On a motion to dismiss pursuant to Superior Court Rule 12(b)(2)[27] for lack of personal jurisdiction over a defendant, "A plaintiff bears the burden of showing a basis for a trial court's exercise of jurisdiction over a nonresident defendant."[28] "In ruling on a Rule 12(b)(2) motion, the Court may consider the pleadings,

---

[24] *Id.,* at 19-20.
[25] *Id.*
[26] *Id.,* at 20-23.
[27] Since the matter now is in the Superior Court, the Court applies the Superior Court Civil Rule corresponding to the Court of Chancery Rules referenced in the Motion.
[28] *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.,* 871 A.2d 428, 437 (Del. 2005).

7

affidavits, and discovery of record."[29]  Normally, the Court applies a two-pronged analysis, first considering whether Delaware's Long Arm statute is applicable, and then determining whether subjecting the nonresident defendant to jurisdiction in Delaware violates the Due Process clause of the Fourteenth Amendment.[30]  Here, however, Qlarant asserts personal jurisdiction based on a forum selection provision of the APA.  IPCL claims that is it not bound by that provision because it was not a party to it.  Thus, the scope to the Court's review is to determine whether IPCL, as a non-signatory to the APA, is bound by that provision.

*Forum non conveniens* is a common law judicially created doctrine that allows the Court to exercise some control over a foreign plaintiff's access to a forum in Delaware.[31]  The decision whether to grant dismissal lies in the sound discretion of the trial court.[32] A *forum non conveniens* analysis requires the Court to analyze and weigh, in light of the relevant circumstances, the following six factors: (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application Delaware law which the courts of

---

[29] *Economical Steel Building Technologies, LLC v. E. West Construction, Inc.*, 2020 WL 1866869, at *1 (Del. Super. Ct. Apr. 14, 2020) (quoting *Ryan v. Gifford,* 935 A.2d 258, 265 (Del. Ch. 2007).

[30] *Biomeme, Inc. v. McAnallen,* 2021 WL 5411094, at *2  (Del. Super. Nov. 10, 2021).

[31] *Ison v. E.I. DuPont de Nemours & Co., Inc.* 729 A.2d 832, 849 (Del. 1999).

[32] *Williams Gas Supply Co. v. Apache Corp.,* 594 A.2d 34, 38 (Del. 1991).

this state more properly should decide than those of another jurisdiction; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious, and inexpensive.[33] These factors are well known in shorthand fashion as the *Cryo-Maid* factors.[34]

How those factors are applied depends on the posture of the case - "what changes is the strength of the presumptions applied."[35] When a case is first filed in Delaware, the plaintiff's choice of forum should not be defeated except where the defendant establishes, based on the *Cryo-Maid* factors, overwhelming hardship and inconvenience.[36] If the action was filed first in a foreign jurisdiction and remains pending, the strong preference for litigating in the forum where the action was first filed applies.[37] If the Court determines that the competing actions were contemporaneously filed, the moving party must show that the *Cryo-Maid* factors

---

[33] *Martinez v E.I. DuPont de Nemours & Co.,* 86 A.3d 1102, 1104 (Del. 2014) (citing *Gen. Foods Corp. v. Cryo-Maid, Inc.* 198 A. 2d 681, 684 (Del. 1964)).
[34] *Id.*
[35] *GXP Capital, LLC v. Argonaut Manufacturing Services, Inc.,* 253 A.3d 93, 101 (Del. 2021) (quoting *Aranda v. Phillip Morris USA, Inc.*, 183 A.3d 1245, 1250 (Del. 2018).
[36] *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.,* 173 A.3d 1033, 1042 (Del. 2017).
[37] *Id.* (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.,* 263 A.2d 281, 283 (Del. 1970).

favor litigating the dispute in the foreign forum.[38] In that circumstance, the Court weighs those factors neutrally, comparing the hardships imposed on each party by the adverse party's chosen forum.[39]

## V. DISCUSSION

This case does not belong here. It belongs in Maryland. Delaware does not have personal jurisdiction over IPCL; and the well-developed Maryland Action, which is nearing a Fall trial, is the far better positioned to resolve all of the disputes between the parties.

### A. The Forum Selection Provision of the APA Does Not Confer Personal Jurisdiction on IPCL.

In asserting Delaware personal jurisdiction over IPCL, Qlarant does not rely on Delaware's long arm statute to claim that IPCL transacts any business in Delaware, caused any tortious injury by act or omission in Delaware, or any other basis under 10 *Del. C*. § 3104(c). Instead, it relies on the forum selection provision of the APA. But, that reliance is not based on IPCL having bargained for the forum selection provision as a party to the APA. It did not and was not. Instead, Qlarant argues that IPCL has waived any challenge to the forum selection provision because it elected to "stand in the shoes" of SCI when it asserted derivative claims in the

---

[38] *National Union Fire Insurance Company of Pittsburgh, PA v. Turner Construction Company,* 2014 WL 703808, at *2 (Del. Super. Feb. 17, 2014).
[39] *In re Citigroup, Inc. Shareholder Derivative Litigation,* 964 A.2d 106, 116 Del. Ch. 2009.

10

Maryland Action. Alternatively, it argues that IPCL is bound by the forum selection provision pursuant to *Capital Group Companies v. Armour*.[40] Both asserted bases for personal jurisdiction are unpersuasive.

**1. "Standing in the shoes" of SCI in one count of the Maryland Action is not a waiver of any objection to personal jurisdiction in Delaware.**

Qlarant argues that IPCL "has chosen to subject itself to the forum selection clause in choosing to 'stand in the shoes' of SCI by asserting derivative claims" in the Maryland Action.[41] Qlarant reasons that IPCL's "knowing and voluntary assertion of claims on behalf of SCI, which are subject a forum selection provision, is sufficient conduct to waive any objection to personal jurisdiction in this Court, where the forum selection provision dictates such claims be brought."[42] It cites by example Count XXIII of IPCL's Second Amended Complaint ("SAC") in the Maryland Action which "asserts a breach of contract claim 'By IPCL, derivatively, on behalf of [SCI] against Qlarant' (SAC ₽ 49.)"[43] That count – Count XXIII against Qlarant – is the only count brought derivatively by IPCL on behalf of SCI.[44] In it IPLC alleges that Qlarant and SCI entered into a Professional Services

---

[40] 2004 WL 2521295 (Del. Ch. Oct. 19, 2004).
[41] Pl.'s Ans. Br., at 8, D.I. 14.
[42] *Id.,* at 9.
[43] *Id.*
[44] Aff. of Keith Machen, Ex. C (SAC), D.I. 13.

11

Agreement ("PSA") which provided certain rights and protections to SCI, including a non-solicitation clause to ensure that Qlarant did not recruit or hire SCI personnel during the term of the agreement or for a year after it terminated.[45] IPCL alleges that Qlarant violated the PSA by hiring SCI's CEO Mapp and others.[46] Pursuant to Sec. II. B. of the SAC, the PSA was negotiated during July 2017 and extended through September 30, 2019.[47]

According to IPCL, the PSA was entered into between IPCL and Quality Health Strategies, Inc, a predecessor to Qlarant on August 4, 2017.[48] The PSA did not include a forum selection clause but did include a Maryland governing law provision.[49] It made no references to either Delaware law or a Delaware venue.[50]

Qlarant acknowledges that the forum selection provision of the APA is the sole basis for personal jurisdiction. For that reason, a derivative claim brought by IPCL on behalf of SCI against Qlarant for allegedly violating the PSA cannot confer personal jurisdiction over IPCL unless, at a minimum, the PSA is linked to the language of the APA. Therefore, the Court first must examine the APA to

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] Def.'s Reply Br. at 5, D.I. 20.
[49] *Id.,* at 6.
[50] *Id.*

determine if there is a link to the PSA. Arguably, there is. The forum selection clause of the APA, found at § 11.7(b) states:

> Each of the Parties hereto hereby irrevocably submits to the exclusive jurisdiction of the Delaware Court of Chancery, or, solely in the event that such court declines to accept jurisdiction, of the other courts of the State of Delaware…solely with respect to the interpretation and enforcement of the provisions of this Agreement, and of the documents referred to in this Agreement, in respect of the transactions contemplated hereby and thereby…the parties consent to and grant any such court jurisdiction over the person of such parties and over subject matter of such dispute…[51]

The forum selection clause is limited to the "the interpretation and enforcement of the provisions" of the APA and of the "documents referred to in [the APA], and in respect of the transactions contemplated hereby and thereby." In other words, the forum selection clause is limited to the interpretation and enforcement of the APA and documents referred to in the APA, plus transactions contemplated by the APA and transactions contemplated by documents referred to by the APA. Qlarant has submitted excerpts of the APA as an exhibit to its Notice of Lodging in this Court.[52] Under Article 7, Conditions of Closing, Section 7.1(m) the following language is found: "Seller shall have terminated that certain services agreement dated August 4, 2017 between the Parties, including waiving that certain non-solicitation

---

[51] Pl.'s Ans. Br., at 5, D.I.14.
[52] Pl.'s Notice of Lodging, Ex. A., D.I. 6 (Super. Ct.).

13

provision contained in such agreement or any other agreement between the parties."[53]   That "certain services agreement" is the PSA.   Termination of that agreement is a transaction contemplated by a document referred to in the APA.

Count XXIII of IPLC's SAC is an allegation by IPLC that Qlarant breached the PSA.  Such an allegation arguably falls within the APA because it pertains to a document – the PSA – referred to by the APA.  But it does not follow necessarily that by bringing that claim in Maryland IPCL has waived personal jurisdiction, or if it did, waive it to the extent necessary to litigate Qlarant's declaratory relief complaint.

Qlarant relies on *Hornberger Management Company v. Haws & Tingle General Contractors, Inc.*[54]   The court in *Hornberger* recognized that lack of personal jurisdiction may be waived by conduct and found that the defendant in that case submitted to the jurisdiction of the court "by participating in the arbitration process, filing a motion for a trial *de novo*, entering into a case scheduling order, participating in discovery, stipulating to an extension of time for filing case dispositive motions, and failing to file the motion [to dismiss for lack of jurisdiction] before the deadline for the filing of case dispositive motions."[55]   The actions by IPCL and by the defendant in *Hornberger* are not comparable, and

---

[53] *Id.*
[54] 768 A.2d 983, 987-89 (Del. Super. Aug. 24 2000).
[55] *Id.,* at 989.

14

Qlarant fails to explain how they are. In *Hornberger*, the defendant actually litigated through trial in Delaware while failing to press the challenge to jurisdiction in a timely fashion. In contrast, IPLC added one count derivatively of behalf of SCI (out of 23) consisting of four paragraphs (out of 338) to the SAC in the ongoing Maryland Action. It did nothing in Delaware. It has never appeared in Delaware except by special appearance in this action where it is pursuing a timely challenge to jurisdiction. Further, it has never given the slightest indication that it thought it was submitting to Delaware's jurisdiction when it brought the derivative claim in Maryland. Qlarant has not cited any case where a defendant was held to have waived personal jurisdiction by its conduct based on conduct remotely similar to IPCL's conduct in Maryland. Instead, it argues *ipse dixit* that IPCL's filing of the derivative claim in Maryland constitutes waiver.

Count XXIII in the Maryland Action's SAC is limited to an allegation on behalf of SCI that Qlarant breached the PSA – referred to in the APA as "that certain services agreement dated August 4, 2017" - by claiming that Qlarant solicited and hired SCI's CEO Mapp. It otherwise does not seek to interpret of enforce the APA. In contrast, Qlarant's declaratory judgment complaint asks the Court to declare that IPCL was not a shareholder of SCI when the APA was executed, declare that all of the transactions consummated pursuant to the APA were validly consummated, and to permanently enjoin IPCL from asserting that it was a stockholder in SCI when

15

the APA was executed and the transactions contemplated by it were consummated.[56] The scope of the Delaware litigation obviously is far greater than the limited allegation of Count XXIII with the potential to preempt the Maryland Action in whole or substantial part.

The Court concludes that IPCL did not waive its objection to personal jurisdiction in Delaware pursuant to the APA's forum selection clause when it added a derivative count against Qlarant on behalf SCI alleging a violation of the PSA. That action was insufficient for the Court to conclude that IPCL waived its objection to personal jurisdiction by its conduct. To hold otherwise would require a finding that IPCL submerged itself in Delaware's jurisdictional waters after having merely dipped its toe into them while standing in Maryland. Finally, to the extent Qlarant felt that Count XXIII should not be litigated in Maryland, it had the opportunity to seek its dismissal based on the forum selection provision of the APA. Apparently, it did not take advantage of that opportunity.[57]

## 2. Delaware does not have personal jurisdiction over IPCL pursuant to *Capital Group*.

Qlarant's alternative argument, in light of the Court's holing that IPCL did not waive its objection to personal jurisdiction by its conduct, is that IPCL is subject to the forum selection provision of the APA as a non-signatory under *Capital*

---

[56] Compl., D.I. 1.
[57] Def.'s Reply Br., at 14.

16

*Group*.[58]  In order to determine whether a non-signatory is bound by a forum selection provision of an agreement, *Capital Group* sets out a three part analysis, all parts of which must be answered in the affirmative to confer jurisdiction: "First, is the forum selection clause valid?  Second, are the defendants third-party beneficiaries, or closely related to the contract?  Third, does the claim arise from their standing relating to the merger agreement?"[59]  Qlarant argues that IPCL has not answered the first question and thus waived any challenge to the validity of the forum selection provision.[60]  As to the second question, Qlarant contends that IPCL is a third party-beneficiary of the APA or closely related to it because it sued in Maryland to recover benefits it wished to recover under the APA and the transactions contemplated by it, including derivatively on behalf of SCI.[61]  Finally, as to the third question, the entire foundation of the Maryland Action is the APA and the transactions contemplated in it.[62]

The court disagrees.  As to the second *Capital Group* question, IPCL is not a third-party beneficiary of the APA.  Just the opposite.  In the Maryland Action, IPCL is not seeking to enforce any rights or obtain any benefits under the APA.

---

[58] Pl.'s Ans. Br., at 10-15, D.I. 14.

[59] *Capital Group*, at *5.

[60] Pl.'s Ans. Br., at 10-11, D.I. 14.

[61] *Id.*

[62] *Id.*

17

Rather a fair reading of its Prayer for Relief is that it seeks damages because it was harmed by the APA, as well equitable relief essentially abrogating the APA.[63]

The Maryland SAC is not "closely related" to the APA. The closely-related test is an expanded form of equitable estoppel where either the party receives a direct benefit from the agreement or it was foreseeable that the party would be bound by the agreement.[64] This Court has held that IPCL seeks no direct benefit based on the APA in the Maryland Action based on its Prayer for Relief. Thus, the second *Capitol Group* question turns on foreseeability. In *Neurvana Medical, LLC v. Balt USA, LLC,*[65] then Viced-Chancellor McCormick analyzed the foreseeability inquiry as a standalone basis for satisfying the closely-related test and observed that it has been applied in only two scenarios.[66] In the first, the court allowed a non-signatory defendant to enforce a forum selection provision against a signatory plaintiff.[67] In the second, the Court held that a non-signatory was bound by a forum selection clause in a non-competition agreement signed by its two controlling

---

[63] *See,* Aff. Keith Machen, Ex. C (SAC), D.I. 13.

[64] *See, McWane, Inc. v. Lanier,* 2015 WL 399582, at *7 (Del. Ch. Jan. 30, 2015).

[65] 2019 WL 4464268 (Del. Ch. Sept. 18, 2019).

[66] *Id.,* at *5.

[67] *Id.* (citing *Ashall Homes, Ltd. v. ROK Entertainment Group, Inc.,* 992 A.2d 1239, 1249 (Del. Ch. 2010); *Lexington Services Ltd. v. U.S. Patent No. 8019807 Delegate, LLC,* 2018 WL 5310261, at *5-6 (Del. Ch. Oct. 26, 2018).

stockholders.[68]  The Vice Chancellor then cautioned that "To ensure a workable closely-related test, Delaware courts are wise to exercise caution in extending the foreseeability inquiry beyond the facts of *Ashall/Lexington* and *iModules*."[69] Neither of these two scenarios are present here and the Court sees no reason to expand the scope of foreseeability to fit these facts.

The answer to the third *Capital Group* question is complicated. *Weygandt v. Weco, LLC* recognized that the meaning of this third question "is that the agreement containing the forum selection clause must also be the agreement that gives rise to the substantive claims brought by or against a non-signatory in order for the forum selection clause be enforceable against the non-signatory."[70]  In order to answer affirmatively, the claims asserted in the Maryland Action must arise from the APA.

IPCL contends that the issue undergirding both the Maryland Action and the litigation here is whether the Maryland plaintiffs, including IPCL, were shareholders of SCI.  The SAC alleges that on October 15, 2015, IPCL exercised warrants pursuant to a Management Advisory Agreement between IPCL and SCI (identified as "Studio" in the SAC), gaining 10% of SCI.[71]  It further alleges that

---

[68] *Id.,* (citing *iModules Software, Inc. v. Essenza Software, Inc.,* 2017 WL 65966880 (Del. Ch. Dec. 22, 2017).
[69] *Id.,* at *6.
[70] 2009 WL 1351898, at *4n.15 (Del. Ch. May, 14, 2009).
[71] Aff. Keith Machen, Ex. C (SAC) at ‖‖ 46, 47, D.I. 13.

SCI issued a warrant for a 20% equity stake in SCI to IPLC on July 15, 2017, and which IPCL exercised on January 1, 2019.[72]  Apparently, the agreements providing IPCL with rights to the warrants have their own forum selection provisions.  So, in that sense, the Maryland Action can be said to have arisen from those agreements providing IPCL with rights to the warrants.

Qlarant points out that the SAC is replete with references to the APA.[73]  If there had been no APA, there would have been no Maryland Action.  So, in that sense, the SAC can be said to have arisen from the APA.

It appears to the Court that the Maryland Action "arose" from more than one source.  No authority has been presented to the Court to guide it in this circumstance by the parties and the Court has found none.  In any event it is unnecessary for the Court dwell on this question because at least one *Capital Group* question – the second – has been answered negatively.  Therefore, IPCL is not subject to the forum selection clause of the APA as a non-signatory under *Capital Group*.

**B.      Dismissal is Warranted on *Forum Non Conveniens* Grounds.**

Notwithstanding the foregoing discussion, even if IPCL is subject to personal jurisdiction on either of the forum selection bases advanced by Qlarant, the Court

---

[72] *Id.*, at ¶¶50, 51.
[73] Pl.'s Ans. Br., at 14-15, D.I. 14.

dismisses the Verified Complaint for Declaratory Relief on *forum non conveniens* grounds. The doctrine of *forum non conveniens* allows a court to decline to hear a case despite having jurisdiction over the parties and the subject matter in favor of another jurisdiction.

Regardless of which party was the first to file, the Court approaches the *forum non conveniens* issue by analyzing the six *Cryo-Maid* factors: (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this state more properly should decide than those of another jurisdiction; (5) the pendency or non-pendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[74]

If Qlarant was the first to file, IPCL must show overwhelming hardship and inconvenience to it by litigating in Delaware.[75] If IPCL was the first to file, however, the Court may exercise its discretion on a significantly lower showing than overwhelming hardship and inconvenience.[76] In that circumstance, *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.* counsels Delaware

---

[74] *Taylor v. LSI Logic Corp,* 689 A.2d 1196, 1198-99 (Del. 1997).
[75] *Id.,* (citing *Chrysler First Business Credit Corp. v. 1500 Locust Limited Partnership,* 669 A.2d 194, 197 (Del. 1995).
[76] *United Phosphorus, Ltd. v. Micro-Flo,* 808 A.2d 761, 764 (Del. 2002).

courts to exercise their discretion freely in deferring to a prior action pending elsewhere in a court capable of doing prompt and complete justice, involving the same parties and the same issues.[77]  The Court also considers whether the actions were filed contemporaneously.  If two cases are filed at approximately the same time, the Court can avoid encouraging a "race to the courthouse" by considering them filed contemporaneously.[78]   The Court considers the circumstances surrounding the filings to determine whether actions were filed contemporaneously.[79]

The threshold question the Court must consider is which action – the Delaware Action or the Maryland Action - was the first one filed because generally "litigation should be confined to the forum in which it is first commenced."[80]  More importantly, the determination of the filing sequence governs the presumption the Court applies.

IPLC began the Maryland Action by filing its original complaint naming SCI, Mapp, and Hunt as defendants on February 14, 2020 in the Circuit Court of Maryland, Prince George's County.[81]  The first amended complaint was filed on

---

[77] 263 A.2d 281, 283 (Del. 1970).
[78] *In re Citigroup Shareholder Derivative Litigation,* at 1186.
[79] *AG Resource Holdings, LLC v. Terral,* 2021 WL 486832, at *3 (Del. Ch. Feb. 10, 2021).
[80] *Id.*
[81] Def.'s Op. Br., at 9, D.I. 13.

April 21, 2021.[82] IPCL states that during discovery, it realized that it had claims against Qlarant as well, and so moved on June 25, 2021 to "add derivative claims, add Qlarant as a defendant, and add additional causes of action…"[83] That motion was granted and the SAC became effective as of July 13, 2021.[84] Qlarant filed its Complaint in the Court of Chancery on July 2, 2021.[85] Counsel for IPLC was notified by email of the filing on July 19, 2021 and served with the complaint on July 26th.[86]

Based on the above chronology, both parties claim to have filed first. IPCL stakes its claim on the fact that it began the litigation in Maryland in 2020 and moved to amend its complaint to add Qlarant on June 25, 2021, all before Qlarant filed its complaint in Delaware.[87] Further, IPCL contends that "It was not until after participating in the Maryland action through depositions and document discovery and after being on notice that the Maryland court was going to permit the amendment against it that Qlarant filed this action in Delaware on July 2, 2021."[88] Finally, IPCL argues that the proper date to assign to the SAC is the 2020 date since

---

[82] *Id.*
[83] *Id.*, at 8-9.
[84] *Id.*, at 9.
[85] Compl., D.I. 1.
[86] Declaration of Mailing, Ex. A, D.I. 7.
[87] Def.'s Reply Br., at 21, D.I. 20.
[88] *Id.*

23

the SAC relates back to the original filing.[89]   Qlarant insists that the only dates that matter are the date it filed in Delaware – July 2nd - and the date IPCL's motion to amend the SAC was granted and SAC filed against it – July 13th.[90]

Whether the SAC relates back to the original filing in Maryland in 2022 or not, the Court deems it to relate back at least to the date IPCL filed its motion to amend the complaint on June 25, 2021.   The timing of Qlarant's Delaware complaint, filed five business days after IPCL moved to add Qlarant in the Maryland Action, leads the Court to conclude that Qlarant's filing was a reaction to IPCL's motion.  It appears that Qlarant had participated in the Maryland action through depositions and document discovery and was on notice that IPCL had taken steps to add it as a defendant to the ongoing litigation there when it brought its declaratory judgment action here.[91]  Even if they do not support a conclusion that IPCL filed first, at a minimum, these considerations warrant a conclusion that the filings were contemporaneous.  The Court next assesses the *Cryo-Maid* factors.[92]

### 1.    The relative ease of access to proof.

---

[89] *Id.,* at 22.

[90] Pl.'s Ans. Br., at 20-23, D.I. 14.

[91] Def.'s Reply Br., at 21, D.I. 20.

[92] The Court does not assess the third *Cryo-Maid* factor – the possibility to view the premises because viewing the premises does not appear necessary.

The first *Cryo-Maid* factor addresses the relative ease of access to proof. Qlarant posits that most of the proof necessary for the requested determination would be documentary and electronic evidence as accessible to this Court as to the Maryland court.[93] The Court understands Qlarant to be suggesting this factor is a wash. IPCL, on the other hand, argues that Qlarant's view of the scope of this litigation is too narrow. It believes that the determination of whether IPCL was a stockholder in SCI at the time the APA was executed involves documents that provide IPCL with rights to certain warrants, and which have Maryland venue provisions.[94] Those documents are outside of the APA.[95] It is possible, the Court supposes, that witness testimony might be necessary to provide context to the circumstances attending those documents. While the Court does not consider this factor dispositive, or even particularly significant, it does slightly tilt in IPCL's direction.

### 2. The availability of compulsory process for witnesses.

The Court considers this factor to carry little weight. To the extent witness testimony is necessary, it is likely that those witnesses have an interest in the

---

[93] Pl.'s Ans. Br., at 22, D.I. 14.
[94] Def.'s Reply Br., at 23-24, D.I. 20.
[95] *Id.*

litigation and would appear voluntarily. But because everyone involved in the case is in Maryland, this factor favors IPCL also.

### 3. Whether the controversy is dependent upon the application of Delaware law.

The APA's choice of law provision selects Delaware law.[96] Similarly, IPCL claims that the documents granting it rights to stock warrants in SCI are governed by Maryland law.[97] Yet, neither Qlarant nor IPCL explain how the application of one state's law would differ from the application of the other's law. The Court finds that this factor favors neither party, and thus has little bearing on the Court's determination of the appropriate forum.

### 4. The pendency of a similar action in another jurisdiction.

While all of the *Cryo-Maid* factors guide the exercise of the Court's discretion, they are not necessarily weighted equally. Delaware law gives special weight to this factor – the pendency of a similar action in another jurisdiction.[98] The Court considers the pendency of the Maryland Action the most significant of the *Cryo-Maid* factors here. It weighs heavily in favor of IPCL. All of the parties to both actions are in Maryland. All of the relevant events occurred in Maryland. All

---

[96] Pl.'s Ans. Br., at 22, D.I. 14.
[97] Def.'s Reply Br., at 23, D.I. 20.
[98] *Texas Instruments, Inc. v. Cyrix Corp.,* 1994 WL 96983 (Del. Ch. Mar. 22, 1994).

of the witnesses critical to the APA and every other relevant transaction are in Maryland. Also, Maryland has an interest in resolving the internal corporate disputes of Maryland corporations.

The core issue of the Delaware litigation - whether IPCL was a shareholder of SCI – will be resolved in the ongoing Maryland litigation. But the Delaware litigation will not resolve other issues in the Maryland Action. There are three plaintiffs in Maryland – IPCL, YE Ventures ("YE"), and Keith Machen ("Machen"). Both YE and Machen are suing Qlarant in numerous counts of the SAC – Counts VII, VIII, IX, XI, XII, XIII, XIV, XV, XVII, XVIII (apparently misnumbered in the SAC as a duplicate of Count XVII), XXI, and XXII.[99] YE and Machen are not defendants in Delaware. Thus, it seems Qlarant will be litigating in Maryland regardless of whether it is successful in this action.[100]

### 5. All other practical problems that would make the trial of the case easy, expeditious and inexpensive.

This factor too favors IPCL. In addition to all of the other considerations previously discussed, discovery is well underway, if not substantially complete in Maryland. Trial is scheduled for the Fall. Too the extent additional discovery will

---

[99] Aff. Keith Machen (SAC), D.I. 13.
[100] Although the parties dispute the significance of it, it is indisputable that the Maryland court denied Qlarant's motion to dismiss.

be necessary in Delaware, it will generate additional costs and effort above that of the Maryland Action. No scheduling order has been entered in Delaware, and it is unclear what additional efforts would be necessary to resolve the case here. The Court sees no reason why it should endeavor to resolve an issue that is well on its way to resolution in Maryland merely because Qlarant arguably "won" a "race to the courthouse" by filing its complaint 11 days before it was added as a defendant in Maryland. Qlarant's "win" itself is dubious in light of its participation in the Maryland Action and its knowledge of IPCL's motion to amend the SAC filed five business days before Qlarant filed its complaint. In short, the Court concludes that it would be easier, more expeditious, and less expensive to proceed to trial in Maryland.

The Court now applies the two presumptions it deems appropriate. First, if the Court considers the competing actions to have been filed contemporaneously and neutrally considers the *Cryo-Maid* factors, it is apparent that they favor IPCL. The only two factors the Court finds particularly significant – the pendency of the Maryland Action and practical considerations of the ease, expeditiousness, and expense of a trial all favor dismissing the Delaware litigation. Obviously, if a neutral application of the Cryo-Maid factors favors IPCL where the actions were filed contemporaneously, one where IPCL was deemed to have filed first in Maryland favors it as well.

28

## VI.    CONCLUSION

**THEREFORE**, Defendant IP Commercialization Labs, LLC's Motion to Dismiss the Verified Complaint of Declaratory Judgment is **GRANTED.**  The Verified Complaint for Declaratory Relief  **DISMISSED WITH PREJUDICE.**


**IT IS SO ORDERED.**


/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.