# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SWSZ HOLDING INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SZ GLOBAL INC., | ) | C.A. No. N25C-05-105 SSA |
| | ) | |
| Defendant, | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN WICH AND | ) | |
| ANTTI UUSIHEIMALA, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

**Submitted: May 22, 2026**
**Decided: May 27, 2026**

## MEMORANDUM OPINION

The Court must determine if a Third-Party Defendant who has filed numerous motions in this matter can now assert a defense for lack of personal jurisdiction. The Court must also determine if a forum selection clause within the non-disclosure agreement ("NDA") requires this Third-Party Complaint to be brought in New York instead of Delaware. Finally, the Court must consider whether the Third-Party Complaint's dismissal is warranted where the Counterclaim Plaintiff's corporate status was purportedly void at the time of filing but later revived.

### *Procedural History*

SWSZ Holding, Inc. (hereinafter "Plaintiff") commenced this action on May 5, 2025, against SZ Global Inc. (hereinafter "Defendant") for breach of contract.[1] On July 4, 2025, Defendant responded with its Answer, Counterclaims, and Third-Party Complaint.[2] The latter filing named Mr. Uusiheimala (hereinafter "Movant") as a Third-Party Defendant. Count IV seeks damages for Movant's alleged breach of provisions under two agreements—a Non-Disclosure Agreement ("NDA") and a Non-Circumvention Agreement ("NCA").[3]

Appearing *pro se*, Movant submitted his first filings on August 27, 2025.[4] These comprised a Motion and "Memorandum of Law in Support of Motion to Dismiss" (collectively the "First Motion").[5] Under the Motion, he moved "to seal or redact improper and defamatory material" within the Third-Party Complaint, under Superior Court Civil Rules 5(g), 12(f), "and the Court's inherent equitable authority to seal or redact specific portions…."[6] Within the attached Memorandum

---

[1] Compl., D.I. 1. The Complaint also states several claims in the alternative to the breach of contract claim.

[2] SZ Global Inc.'s Answ., Affirmative Defenses, Countercls., and Third-Party Compl., D.I. 5.

[3] *Id.* at 52. The NDA and NCA are attached to the Third-Party Complaint as Exhibits 3 and 5.

[4] Mot., D.I. 10; Mem. of Law in Support of Mot. to Dismiss, 11. The referenced date is when the Office of the Prothonotary accepted the filings. Movant dated the documents August 11. At any rate, the exact date is not relevant to the Court's conclusion.

[5] D.I. 10, 11.

[6] D.I. 10, ¶ 1. None of Movant's filings are paginated. Where possible, the Court employs the section and paragraph numbers for pincites. Where those identifiers are unavailable, the Court designates page number one as starting at the cover page.

of Law in Support, Movant asserted four defenses.[7] However, he did not object to the Court's exercise of jurisdiction over his person. Instead, while seeking dismissal or alternative relief on other grounds, he challenged the merits,[8] even noting he "stands prepared to introduce [preserved evidence] at deposition or trial if necessary."[9]

At this point, an issue arose regarding Movant's citation to nonexistent legal authorities to this Court. The Court convened an in-person hearing on October 15, 2026. The Court could not verify or locate quoted language from seven cases cited by Movant in the First Motion. The hearing's focus was to clarify that despite Movant's *pro se* status, the Court will not tolerate citation to nonexistent authorities. Therefore, the First Motion to Dismiss was denied, without prejudice.[10] Recognizing Movant's *pro se* status, the Court provided leave to refile by November 14.[11]

---

[7] D.I. 11. Movant cites Rules 12(b)(3) and 12(b)(6) for improper venue and failure to state a claim. He also argued over the facts and requested that certain allegations be struck under Rule 12(f). *Id.* at 1, 5–6, 11–22.

[8] *See* D.I. 11, § II, ¶ 11 (framing the Third-Party Complaint as "a retaliatory action"); *id.* § II, ¶ 14 ("The NDA and non-circumvention agreement at the center of [Defendant's] theory is time-limited by its own terms."); *id.* § III, ¶ 26 ("[Facts asserted by Movant] directly undermine [Defendant's] present claims of circumvention, interference, or breach. They demonstrate a transparent, collaborative dynamic that only became 'misconduct' … after litigation was threatened.") (citing to "Exhibits O—S").

[9] D.I. 11, at 22.

[10] Judicial Action Form, D.I. 31.

[11] *Id.*

But Movant took other routes first. Within days of his in-person appearance at the hearing, Movant filed a Letter asserting his intention to seek sanctions.[12] Movant argued the Third-Party Complaint was filed while the corporate charter was "forfeited."[13] Movant sought discovery concerning the Third-Party Complaint's filing and Defendant's corporate status.[14]

On the same day, Movant filed what he deemed a "Supplemental Motion" (hereinafter the "Second Motion") challenging this litigation on several fronts.[15] This new filing raised entirely distinct arguments for dismissal, centering on Defendant's corporate status. Once again, he did not raise lack of personal jurisdiction as a defense.

Several weeks later, Movant filed a "Motion to Dismiss for Lack of Personal Jurisdiction and to Protect His Constitutional Right to Due Process."[16] In this Motion—the "Third Motion"—Movant challenged the Court's exercise of personal jurisdiction over him.[17] He revisited his argument that New York is the proper forum for this action, per the NDA.[18] Some time elapsed: Defense Counsel withdrew,[19]

---

[12] Rule 11 Safe-Harbor Notice, Preservation Demand, and Request for Withdrawal/Explanation, D.I. 32.
[13] *Id.* at 2.
[14] *Id.* at 1–2. *See also id.* at 2–4.
[15] Supplemental Mot. to Dismiss, D.I. 34.
[16] Mot. to Dismiss, D.I. 39.
[17] *Id.* at 1–9.
[18] *Id.* at 8.
[19] D.I. 48, 49.

new Counsel entered.[20]  The Court heard argument at an in-person hearing on May 14.[21]

### *Defenses and Objections Under Rule 12*

Superior Court Civil Rule 12(b) establishes the defense of lack of jurisdiction over the person "shall be asserted in the responsive pleading … [or] by motion[.]" Further, Rule 12(g) states that "[i]f a party makes a motion under this Rule but omits therefrom any defense or objection then available to the party which this Rule permits to be raised by the motion, the party ***shall*** *not thereafter make a motion based on the defense or objection so omitted*, except[ing]" the defenses identified under Rule 12(h)(2).[22]  A defense asserting lack of personal jurisdiction is not within the exceptions established in Rule 12(h)(2).  To put a finer point on the matter, Rule 12(h)(1) provides that "[a] defense of lack of jurisdiction over the person … is waived" in two scenarios.  The first, under (h)(1)(A), contemplates "the circumstances described in subdivision (g)"—i.e., where a party moves under Rule 12 but omits defenses then available.  The second scenario imputes waiver where the party fails to raise the defense via motion, responsive pleading, or permitted amendments to the pleading.

---

[20] D.I. 61.  Counsel for Defendant opposed Movant's Motion to Dismiss.  Resp. and Opp'n to Mot. to Dismiss, D.I. 72.

[21] Judicial Action Form, D.I. 73.

[22] Super. Ct. Civ. R. 12(g) (emphasis added).  Rule 12(h)(3) provides an exception for lack of subject matter jurisdiction.

4

In short, Rule 12(h)(1) is "quite clear."[23] As this Court has described the Rule: "[i]t advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If he wishes to raise any of these defenses he must do so at the time he makes his first defensive move—whether it be a Rule 12 motion or a responsive pleading."[24] Failure to exercise diligence on this front carries consequences: "[i]n Delaware issues questioning the Court's jurisdiction over the person of the defendant have historically been required to be raised at the earliest time in the proceedings. And if the party overlook it, and take steps in the cause, he cannot afterward turn back and object."[25]

As for the defense of improper venue under Rule 12(b)(3), "this Court 'may consider materials outside the complaint.'"[26] "When ruling on such a motion, the Court should 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'"[27]

---

[23] *Mason v. Allstate Indem. Co.*, 2024 WL 4563935, at *3 (Del. Super.) (citations omitted) *quoting Mergenthaler v. Asbestos Corp. of Am.*, 1989 WL 158501, at *2 (Del. Super.).

[24] *Id.* (alteration to punctuation) (citations omitted) *quoting Mergenthaler*, 1989 WL 158501, at *2.

[25] *Id.* quoting *Mergenthaler*, 1989 WL 158501, at *3.

[26] *Degregorio v. Marriott Int'l, Inc.*, 2018 WL 3096627, at *5 (Del. Super.) *quoting Simon v. Navellier Series Fund*, 2000 WL 1597890, at *4 (Del. Ch.).

[27] *Nachbar v. Coronados Pool Plaster Inc.*, 2025 WL 1863255, at *1 (Del. Super.) (citations omitted) *quoting Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super.).

## *Analysis*

### *Personal Jurisdiction*

Movant failed to exercise the diligence required to challenge personal jurisdiction. At the outset, Movant filed a Motion to Strike and Dismiss under Rules 12(f), (b)(3), and (b)(6).[28] These filings were silent on the matter of personal jurisdiction. The Court finds waiver under Rule 12(h)(1)(A).

Beyond waiver, his conduct has indicated assent to personal jurisdiction.[29] On October 15, Movant appeared before this Court for a hearing regarding his filings. After that appearance, Movant copied this Court on his correspondence with Counsel, asserting his intention to seek sanctions and limited discovery. He filed a second Motion to Dismiss, based on an entirely new argument, which still did not challenge the Court's jurisdiction over his person. Movant's filings indicate his participation as "an 'active actor' in this litigation."[30] He has taken numerous steps

---

[28] *See* D.I. 10, 11. Once again, he did not raise personal jurisdiction.

[29] *Massey v. Ball*, 595 A.2d 390, 394 (Del. 1991) *quoting Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982). *See also City of Wilmington v. Baker*, 1986 WL 3635, at *3 (Del. Ch.) (citations omitted) ("It is settled law that the entrance of a general appearance by a defendant is a submission to the in personam jurisdiction of the Court...."). "[T]he ordinary meaning of the word 'appearance' in law imports ... submission [to jurisdiction over the person]." *Sands v. Lefcourt Realty Corp.*, 117 A.2d 365, 368 (Del. 1955) (citations omitted). Although "mere physical appearance ... may not constitute an appearance[,]" courts have held that "an appearance is effectuated" where one "seeks in any way to participate in the case...." 6 C.J.S. *Appearances* § 27 (citations omitted). "An appearance at ... hearing signifies an overt act by which a person against whom suit has commenced submits himself ... to the jurisdiction of the court." *Id.* § 30 (citation omitted). Similarly, "a motion to dismiss on an issue other than jurisdiction is a request which invokes the power of the court and is a 'general appearance' conferring jurisdiction." *Id.* § 31 (citation omitted).

[30] *Sussex Farms Ltd. v. Mbanefo*, 2022 WL 2126228, at *2 (Del. Super.) (citations omitted). *See generally Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 988

6

that are inconsistent with an objection to personal jurisdiction: omitting the defense from his first two Motions, making a general in-person appearance, and directing litigation.[31] Thus, he cannot now object on personal jurisdiction grounds.

Movant now suggests his Third Motion relates back to his earlier filings. Specifically, since the Court gave him leave to refile his First Motion, he suggests he did not waive the defense. The Court disagrees. Raising entirely new arguments (after dismissal because the merits could not be reached due to Movannt's citation to nonexistent authorities) does not constitute a refiling. The Court gave Movant a chance to correct his misrepresentations—not a chance to begin the case anew.

*Venue*

The First and Third Motions raised the issue of venue. Quoting the NDA, Movant argues "[t]his permissive clause authorizes New York jurisdiction and, by implication, negates Delaware jurisdiction."[32] While the argument from Movant

---

(Del. Super. Ct. 2000) (citations omitted) *quoting Alger v. Hayes*, 452 F.2d 841, 844 (8th Cir. 1972) ("[A] substantial body of law … holds that a defendant can waive a defense of lack of personal jurisdiction because the defendant's conduct did 'not reflect a continuing objection to the power of the court to act over the defendant's person.'").

[31] *See* D.I. 11, at 22 (emphasis added) ("[Movant] has preserved extensive contemporaneous documentation, third-party witness statements, and corroborating materials, and *stands prepared to introduce them at* deposition or *trial if necessary*."); D.I. 32, at 5 (emphasis added) (providing that Letter filed "is given without waiver of any rights, remedies, or claims [Movant] may have, *including the right to seek expedited relief from the Court*...."); D.I. 34, at 5 ("[Movant] therefore seeks fees and other relief if the record so warrants."). *Cf. Hornberger Mgmt. Co.*, 768 A.2d at 989 *quoting Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) ("The personal jurisdiction defense 'may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct.'").

[32] D.I. 39, at 8. Movant draws from the NDA for "consent[] to the jurisdiction and venue in Manhattan, New York, US." *Id.*

7

conflates venue and personal jurisdiction, the Court will consider the *pro se* filing liberally and conduct a venue analysis. Because the parties contracted for the application of New York law, interpretation of the at-issue forum selection clause is governed by the law of New York.[33]

The NDA states "[t]his Agreement shall be governed by the laws of the State of New York without regard to principles of conflicts of law. Receiver [Movant] consents to jurisdiction and venue in Manhattan, New York, USA."[34] Further, paragraph four states "[i]f Receiver [Movant] violates or threatens to violate this Agreement, the Company shall be entitled to an injunction or similar equitable relief to be issued by any court of competent jurisdiction...."[35]

Choice of law is our starting point, since that analysis will provide the framework for interpreting the forum selection clause. Our Supreme Court has articulated "a three part test to determine the choice of law in a dispute before the Delaware courts...."[36] This Court need only employ the first part—whether "the parties made an effective choice of law through their contract"—given that the

---

[33] *See* D.I. 5, Ex. 3. By contrast, Delaware law governs the NCA—and "disputes arising under or in connection with this Agreement shall be resolved in the courts of Delaware." *Id.*, Ex. 5. The Court's analysis accordingly addresses only the NDA.

[34] D.I. 39, Ex. 3, ¶ 6.

[35] *Id.* ¶ 4. Of course, this Court does not traditionally hold the power of equitable relief, but the issue of subject matter jurisdiction has not been raised, and, at this time, the Court will not *sua sponte* conduct such analysis.

[36] *Stillwater Mining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 289 A.3d 1274, 1283 (Del. 2023) *citing Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017).

second and third steps address conflicting laws in the absence of a contractual agreement.[37] Under that inquiry, "Delaware courts enforce contractual choice of law provisions" so long as "there is a material connection between the chosen jurisdiction and the transaction."[38]

New York has a material connection to the transaction at issue. The contracting parties are both materially connected to the state: Movant resides in New York, and Defendant's principal place of business is in New York.[39] Accordingly, New York law will govern the NDA's forum selection clause.

Delaware Courts have previously considered a contractual forum selection clause applying New York law. Although "the topic of the clause can be characterized as 'procedural[,]'" the chosen law "must be applied when interpreting the Forum Selection Clause."[40] "The court does recognize that under New York law[] a forum selection clause should be deemed exclusive if it contains '[a]ny language that reasonably conveys the parties' intention to select an exclusive

---

[37] *Id.* quoting *Certain Underwriters at Lloyds, London*, 160 A.3d at 464.

[38] *MTA Can. Royalty Corp. v. Compania Minera Pangea, S.A. de C.V.*, 2020 WL 5554161, at *3 (Del. Super.) *citing Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1256 (Del. 2001).

[39] D.I. 5, at 4, 28. This analysis should not be conflated with the personal jurisdiction inquiry. New York's connection to the NDA does not change Movant's submission to this Court's jurisdiction.

[40] *Fitzgerald v. Cantor*, 1998 WL 842304, at *1 (Del. Ch.). *See also Brastor Mercantile, Ltd. v. Cent. Citrus S/A*, 1989 WL 70971, at *5 (Del. Super.) (citations omitted) (applying Ontario law to surmise "the forum selection clause here does not vest exclusive jurisdiction in Ontario and Brazilian courts....").

forum.'"[41] New York recognizes the public policy "of respecting forum selection clauses...."[42]

The Court finds the parties intended application of New York law, therefore the above-cited standard for interpretation of a forum selection clause governs this analysis. Even under that standard—which differs from that under Delaware law[43]— the Court does not find the language of this NDA reasonably conveys an intent to select New York as the exclusive forum. Paragraphs four and six compel this conclusion. Specifically, paragraph four references "any court of competent jurisdiction," and paragraph six merely indicates Movant "consents" to jurisdiction in New York. For language to be exclusive, it necessarily limits other courts from hearing an action; however, paragraph four plainly allows the parties to take action outside of New York. Further, paragraph six lacks mandatory language. Consequently, venue is proper.

---

[41] *Troy Corp. v. Schoon*, 2007 WL 949441, at *4 (Del. Ch.) (emphasis removed) *quoting Fitzgerald*, 1998 WL 842304, at *2.

[42] *Del Pharms., Inc. v. Access Pharms., Inc.*, 2004 WL 161355, at *8 (Del. Ch.) *citing Babcock & Wilcox Co. v. Control Components, Inc.*, 614 N.Y.S.2d 678 (N.Y. Sup. Ct. 1993).

[43] Delaware law provides that "[i]f a forum selection clause validly limits a plaintiff to a single forum, that clause operates to divest a court that otherwise has jurisdiction of its status as a proper venue for the plaintiff to sue." *Del Pharms., Inc.*, 2004 WL 161355, at *5 *quoting Simon v. The Navellier Series Fund*, 2000 WL 1597890, at *4 (Del. Ch.). Under Delaware law, this Court should only dismiss "where the parties use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action." *In re Bay Hills Emerging Partners I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch.) *quoting Scanbuy, Inc. v. NeoMedia Techs.*, 2014 WL 5500245, at *2 (Del. Ch.). The specific language used within the forum selection clause matters, as it "may be permissive or mandatory." *Id.* at *5.

10

*Motion to Dismiss for Lack of Corporate Capacity*

Movant asserts "[p]ublic records of the Delaware Division of Corporations show that [Defendant's] certificate of incorporation had been forfeited for failure to comply with statutory franchise tax/reporting obligations prior to July 4, 2025 and that the Certificate of Revival was not issued until July 9, 2025."[44] As addressed at oral argument, the document Movant relied upon and filed as an exhibit does not say much. Specifically, Exhibit A notes it is "Not an Official Certificate of Status."[45] Moreover, this document indicates the entity is in good standing as of July 9, 2025.

Even assuming Movant is correct that Defendant's certificate was at one point forfeited or void, he still is not entitled to dismissal. 8 *Del. C.* § 312(e) addresses revival:

> [R]evival shall validate all contracts, acts, matters and things made, done and performed within the scope of its certificate of incorporation by the corporation, its directors or members of its governing body, officers, agents and stockholders or members during the time when its certificate of incorporate was forfeited or void pursuant to this title, with the same force and effect and to all intents and purposes as if the certificate of incorporation had at all times remained in full force and effect.

Therefore, by statute, even if the certificate was void at the time of the filing of the Third-Party Complaint, since it is now in good standing,

---

[44] D.I. 34, at 3.
[45] D.I. 35, Ex. A.

11

Defendant's action is validated.[46] Movant acknowledged Defendant's revival on July 9, 2025; further, his own paperwork demonstrates Defendant is now in good standing.

### *Conclusion*

The Motions to Dismiss for lack of personal jurisdiction and improper venue are hereby DENIED. The Supplemental Motion to Dismiss for lack of corporate capacity is also DENIED.

**IT IS SO ORDERED.**

**/s/Sonia Augusthy**
**Judge Sonia Augusthy**

---

[46] In short, revival will "retroactively validate all actions that occurred since [the corporation] became void." *Paul Rivera & Kalibrr, Inc. v. Angkor Cap. Ltd.*, 2024 WL 3873050, at *9 n.90 (Del. Ch.) *citing* 8 *Del. C.* § 312(e). *See also Dorsey v. Jones*, 2026 WL 850417, at *4 n.31 (Del. Ch.) (citations omitted).

12